Paul Gangloff, Appellant, v. Dr. George L. Apfelbach, Appellee.

Gen. No. 42,538.

Opinion filed June 16, 1943.

JOSEPH BARBÈRA, of Chicago, for appellant.

RAWLINS & WRIGHT, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Plaintiff brought suit against defendant for malpractice in the performance of an operation on his arm following an injury resulting from a fall. The cause was tried before a jury, but at the close of plaintiff's evidence the court directed a verdict in favor of defendant and entered the judgment from which plaintiff has taken an appeal.

It appears from the evidence that plaintiff was employed in a store of the National Tea Company at 2741 North Clark street, Chicago. On the morning of March 7, 1936, while putting a sign in the window, he fell backward and fractured his right elbow. He experienced considerable pain and a swelling of his arm. The following morning he called Dr. Apfelbach and was taken to the Alexian Brothers Hospital, where he was examined by defendant and X-ray pictures were made of his elbow. Heat was applied to reduce the swelling and two days later his arm was placed in a cast, with the elbow flexed so that his hand pointed toward the chin. The next day he returned to his home, and thereafter he regularly visited defendant's office for about six weeks, until the cast was removed. After the removal of the cast he had the use of his wrist and fingers, but found that his elbow was locked and would not move. Thereafter defendant gave him light treatments two or three times a week until June 1936, when he was returned to the hospital. Defend-

ant told him that in order to relieve the locked elbow he would have to resort to surgery and remove the head of the radius. Plaintiff testified that before the operation his fingers and wrist were perfectly normal. Following the operation his arm was bandaged and a board splint was applied so that his fingers and thumb were free, curled over the end of the board. He felt a burning sensation in his arm and noticed that his fingers had lost their power of movement. In reply to plaintiff's inquiry, defendant told him that this was probably caused by nerve involvement. Two days later the splint was removed, a new dressing was applied, the splint was reapplied, and a metal contrivance was attached. He remained in the hospital about two weeks, where defendant visited him every other day.

The function and movement of the fingers and thumb failed to improve. Plaintiff visited and was examined by another physician, Dr. Voris. Thereafter, in November 1936, defendant performed a second operation. Plaintiff testified that defendant had told him "it would fix the involvement of the nerve" and restore the use of his fingers and hand. No noticeable improvement followed the second operation. Light and heat treatments were continued, and plaintiff states that defendant assured him of the ultimate use of his hand.

In January 1938 defendant performed a third operation. Plaintiff testified that defendant told him it would "eradicate the nerve involvement" so that he would have the use of his fingers, but it failed to produce the desired results. The following year defendant sent plaintiff to see Dr. Steindler of Iowa City, who examined him. Upon his return he had a conversation with defendant, who told him it would be inadvisable to operate again, and recommended treatments, which continued until March 1940.

Plaintiff's suit was instituted in April 1941. The gravamen of the complaint is that the unfortunate re-

sult was caused by defendant's failure to properly diagnose the injury, apply correct and necessary treatment to effect a cure thereof, and that he carelessly and improperly operated upon plaintiff's elbow ''so that the nerves, muscles, ligaments, and the ulnar and radial nerves of the right arm and elbow were cut, severed, and otherwise irreparably injured.''

Upon this state of facts, two questions were presented for the court's determination in ruling upon the motion for a directed verdict: (1) was there any evidence tending to show, or from which it could fairly be found, that defendant was guilty of any negligence or want of skill in and about the operation and treatment of plaintiff's arm, and (2) did the statute of limitations begin to run when the alleged act of negligence was committed in 1936, or from the time when the physician ceased to treat the patient in 1940. While expressing grave doubt as to whether there was any evidence adduced by plaintiff which could properly be submitted to the jury, the court predicated its ruling on the ground that the cause had been barred by the two-year statute of limitations (Ill. Rev. Stat. 1941, ch. 83, par. 15 [Jones Ill. Stats. Ann. 107.274]). Although the three operations were performed more than two years before suit was instituted, the loss of movement and function of plaintiff's fingers and hand is definitely fixed by the evidence as of June 1936, following the first operation. The evidence does not support plaintiff's charge of negligence, want of skill or omission with respect to the light and heat treatments applied after any of the operations. The gravamen of plaintiff's contention is that defendant lulled him into believing that the use of his hand and fingers would ultimately be restored by further operations and the treatments applied, and it is urged that under such circumstances the statute of limitations should not begin to run until after the relationship of physician and patient has been terminated, no matter how long it may continue. Counsel for both parties agree that

the question of when the statute of limitations begins to run against physicians, surgeons and dentists for malpractice, has not been decided in any reported case in this State, and apparently there are two divergent views on the subject.

As indicated from the annotation in 74 A. L. R., pp. 1317–1325, entitled "When Statute of Limitations commences to run against actions against physicians, surgeons, or dentists for malpractice," a substantial number of jurisdictions have adopted the rule that the limitation period does not begin to run until the treatment ceases, and decisions in California, Minnesota, New York, Ohio and Wisconsin are cited by plaintiff and urged as supporting this rule. *Gillette v. Tucker* (1902), 67 Ohio St. 106, 65 N. E. 865, is most frequently cited as representing this view. The defendant there performed an appendectomy on the plaintiff, and neglected or carelessly forgot to remove from the abdominal cavity a sponge which he had placed therein, and closed the incision. The gauze remained within the cavity for about 18 months, unknown to either the patient or the physician, and serious consequences ensued and continued during the entire professional relationship between the parties. The Ohio statute of limitations fixed the time within which suit might be brought in cases of that character at one year, and the proceeding was not instituted until more than a year after the operation had been performed. The court held that the period of limitation did not commence with the date of the closing of the incision because "The facts in the case . . . show a continuous obligation upon the plaintiff in error [the surgeon], so long as the relation or employment continued, and each day's failure to remove the sponge was a fresh breach of the contract implied by the law. The removal of the sponge was a part of the operation, and in this respect the surgeon left the operation uncompleted." The dissenting opinion of three

judges was opposed to the principle that the negligence of the physician could be deemed to continue throughout the entire treatment, and subsequently, in 1905, the doctrine of the dissenting opinion was adopted in *McArthur v. Bowers* (memorandum decision), 72 Ohio St. 656, 76 N. E. 1128. However, in 1919, the *McArthur* case was disapproved and the doctrine of the *Gillette* case was reaffirmed in *Bowers v. Santee*, 99 Ohio St. 361, 124 N. E. 238.

In *Harding v. Liberty Hospital Corp.* (1918), 177 Cal. 520, 171 Pac. 98, the complaint charged that defendant, through its chief surgeon, failed and neglected to use proper care, diligence and skill in reducing a fracture, by reason whereof plaintiff's leg was shortened and its use impaired. The principal issue presented was whether the limitation period of one year prescribed by the California statute, constituted a bar to plaintiff's action. The court referred to the principle that the limitation period might be considered as commencing with the end of the treatment, but held that since plaintiff's complaint centered upon a specific negligent act, the period should be computed as commencing with that act.

In *Schmitt v. Esser* (1929), 178 Minn. 82, 226 N. W. 196, plaintiff suffered a dislocation and fracture of the right ankle. The physician examined the injury, attempted to reduce the dislocation and set the fracture, and represented to the plaintiff that ''because of the peculiar injuries they would not heal completely for two years after the treatment was finished.'' In holding that the trial court had properly overruled a demurrer based on the statute of limitations, the reviewing court said that ''We think the treatment and employment should be considered as a whole, and if there occurred therein malpractice the statute of limitations begins to run when the treatment ceases.'' It is to be observed, however, that the court apparently limited the application of the principle enunciated by

the following statement: ''It is true that if there be but a single act of malpractice subsequent time and effort merely to remedy or cure that act could not toll the running of the statute.''

In *Bush v. Cress* (1929), 178 Minn. 482, 227 N. W. 432, it was held that where defendant, employed to attend plaintiff in childbirth, continued to treat her for several weeks after the delivery of the child, the statute would not commence to run until the treatment ceased. The decision is predicated upon the theory that the employment contemplated a continuous service.

In *Sly v. Van Lengen* (1923), 120 Misc. 420, 198 N. Y. S. 608, a surgeon performing an operation, failed to remove a sponge from plaintiff's pelvic cavity, where it remained for more than two and one-half years, and during that time he continued to treat the patient. The New York statute prescribed a two-year limitation period, and suit was not brought until more than two years after the operation was performed. Accepting the allegations of the complaint as true, the court held that plaintiff's cause of action accrued as much by reason of the continuous breach of duty on the part of defendant in treating her and in failing to remove the sponge, as it did because of the alleged negligent act on the day of the operation, but here again the court observed: ''If it should appear upon the trial that the injury from which plaintiff is suffering was inflicted at the time of the operation, and was not occasioned in any manner by the subsequent treatment of the plaintiff, nor by any neglect on his part after the operation, a different situation would arise. . . . This motion [by defendant to dismiss complaint] must be determined solely upon the allegations of the complaint.''

In *Conklin v. Draper* (1930), 229 App. Div. 227, 241 N. Y. S. 529, affirmed in memorandum decision (1930)

in 254 N. Y. 620, 173 N. E. 892, it was held that where the action was based upon the surgeon's negligence in leaving a forceps in an abdominal cavity after performing an operation, the statute would run from the time of the operation, notwithstanding the fact that plaintiff did not discover the forceps for two years.

In *Lotten v. O'Brien* (1911), 146 Wis. 258, 131 N. W. 361, the court held that the "statute of limitations began to run when the cause of action accrued, and this accrued when the negligent acts were committed without reference to the time of discharge. The real negligent act which caused the injury to plaintiff was the improper setting of the bones in his arm. The negligent omission to discover this occurred at such dates and times as the defendant undertook to examine, treat, and care for the disabled arm.'' The decision is based on the theory that the statute of limitations had run since there was no treatment within the period, notwithstanding the fact that the defendant had not been discharged.

It will be observed that in the foregoing decisions upon which plaintiff relies, representing the doctrine enunciated in the several States, adopting the rule that the limitation period does not begin to run until the treatment ceases, the courts have in several instances pointed out that if there be but a single act of malpractice, subsequent time and effort merely to remedy or cure that act would not toll the running of the statute; and the decisions in those States are predicated on the theory that the treatment and employment should be considered as a whole, and if there occurred therein malpractice, the statute of limitations begins to run when the treatment ceases. In *Gillette v. Tucker*, the holding of the court was predicated on a continuous obligation of the physician so long as the relation or employment continued, and under the particular circumstances of that case, each day's failure

to remove the sponge was a fresh breach of the contract implied by the law. The dissenting judges refused to concur in this theory.

As against the theory enunciated in the foregoing decisions, the general principle adopted in the vast majority of jurisdictions is that the statute of limitations attaches when and from the time that the law affords a remedy for the injury sustained. There enters into the discussion of many cases the question of concealment of facts by the person alleged to be liable, but such actions are framed upon charges of fraud which do not enter into consideration of the case at bar.

In 34 Am. Jur., Limitation of Actions, sec. 160, the author, in discussing the general principles underlying a right of action against a wrongdoer, says that "where an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. It is not material that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date. The act itself is regarded as the ground of the action, and is not legally severable from its consequences. It is from then that the statute begins to run, and not from the time of the damage or discovery of the injury. It is immaterial whether the conduct out of which the cause of action arises is the breach of an implied contract or the affirmative disregard of some positive duty; in either case, the liability arises immediately on the breach or disregard of duty, and an action to recover the damages, which are the measure of such liability, may be immediately maintained." Decisions in numerous States are cited in support of these statements.

In *Weinstein v. Blanchard* (1932), 109 N. J. L. 332, 162 Atl. 601, the physician was charged with negli-

gently leaving a drainage tube in the wound, which was not discovered until a long time later, when suit was brought. The court held that the statute began to run at the time the tube was inserted, and said: "In support of the rule declared in *Gogolin v. Williams* [91 N. J. L. 266, 102 Atl. 667] there is a long line of cases dealing quite squarely with this subject. Many of them are found cited in 17 R. C. L. 765, secs. 129, 130; also in Am. & Eng. Ann. Cas. 696; also in 126 American State Reports, 950, 951, where in subsection 'b' it is stated: 'The statute of limitations ordinarily runs against a physician or surgeon for damages due to malpractice from the time of the act of negligence or unskillful treatment, and not from the time of the consequential injury.' "

In *Albert v. Sherman* (1934), 167 Tenn. 133, 67 S. W. (2d) 140, where suit was brought to recover damages against a dentist because of alleged malpractice, the court said: "Undoubtedly the weight of authority is to the effect that the statute of limitations begins to run against an action of this kind from the date of the wrongful act rather than from the date of the damage caused. *Cappucci v. Barone*, 266 Mass. 578, 165 N. E. 653; *Ogg v. Robb*, 181 Iowa 155, 162 N. W. 217, L. R. A. 1918C, 981; *Hahn v. Claybrook*, 130 Md. 179, 100 A. 83, L. R. A. 1917C, 1169; *Wetzel v. Pius*, 78 Cal. App. 104, 248 P. 288, and see other cases collected in note, 74 A. L. R. 1318. . . . While there is some conflict in the decisions, the majority rule is better sustained by authority and reason. If, as again emphasized in *Patten v. Standard Oil Co.*, 165 Tenn. 438, 55 S. W. (2d) 759, statutes of limitation are to be regarded as statutes of repose, the majority rule should obtain. *Recognition of a contrary rule would permit a plaintiff, afflicted with some malady, to trace that malady to an original cause alleged to have occurred years and years ago. No practicing physician or dentist would ever be safe. The origin of disease is involved in uncer-*

*tainty at best. While hardships may arise in particular cases by reason of this ruling, a contrary ruling would be inimical to the repose of society and promote litigation of a character too uncertain and too speculative to be encouraged."* (Italics ours.)

In *Hahn v. Claybrook* (1917), 130 Md. 179, 100 Atl. 83, plaintiff charged a physician with negligence in administering treatments which resulted in a discoloration of the skin. The treatments continued over a long period of time, the discoloration first appearing about four years after the initial visit. The suit was not started until about 11 years after plaintiff's first visit, after the three-year period of the statute of limitations had run. The court held that the statute of limitations began to run at the time when the alleged injury was apparent, and in the course of its opinion the court, referring to the frequently cited case of *Coady v. Reins* (1872), 1 Mont. 424, said that there it was held "in an action for negligence of a physician, that the gist of the action in this instance is the negligence and unskilfulness or breach of duty as laid in the complaint, and not the injury or damage consequent thereon. But the statute in cases of this nature begins to run, regardless of the form of action, whether in *case* or *assumpsit,* from the time of the negligence or breach of duty. In *Wilcox v. Plummer,* 4 Peters 181, it is distinctly held, that the statute begins to run from the time a right of action accrues and not from the time that the damage is developed or becomes definite."

In *Carrell v. Denton* (1942), 138 Tex. 145, 157 S. W. (2d) 878, the doctor was charged with negligently leaving a sponge in the body of plaintiff in November 1931, which was not discovered until 1935, after the statute of limitations had run. About a year later plaintiff instituted suit and contended that the statute did not become operative until the sponge had been discovered, but the court held that the action was barred, and in

the course of its opinion said: "The wrongful act from which the damages sued for resulted, consists of the negligent act of Dr. Carrell in failing to remove the gauze sponge from inside the body of the plaintiff before the incision in his body was closed. The plaintiff's cause of action for the resulting damages accrued at that time. *Houston Water Works Co. v. Kennedy,* 70 Tex. 233, 8 S. W. 36. The statute of limitation began to run at that time and had run its prescribed course, without interruption, before this suit was brought. The plaintiff's counsel insists that the statute did not begin to run until November 1935, when the plaintiff discovered that the gauze sponge had been left inside his body by Dr. Carrell. The proposition which lies at the bottom of this contention is to the effect that the relation between a surgeon and his patient involves trust and confidence, therefore fraudulent concealment is imputed to Dr. Carrell because of his failure to inform the plaintiff that the gauze sponge had been left inside the plaintiff's body. . . . In conducting a surgical operation on his patient, and in respect to any treatment he may administer, a surgeon is under the duty to exercise due care. . . . but the failure does not, of itself, constitute fraud or expose the surgeon to the imputation of fraudulent concealment. Among other essential ingredients, a fraudulent concealment in cases of this sort includes, first, actual knowledge of the fact that a wrong has occurred, and, second a fixed purpose to conceal the wrong from the patient. Neither of these ingredients appears from the allegations of the plaintiff's petition."

In *Gum v. Allen* (1931), 119 Cal. App. 293, 6 P. (2d) 311, where suit was brought for alleged malpractice, the court held that the statute of limitations began to run from the date of the original injury, and after referring to the doctrine of the Ohio cases heretofore cited, quoted from *Wetzel v. Pius* (1926), 78 Cal. App.

104, 248 Pac. 288, as follows: " 'The original injury remains the sole cause of action, and subsequent acts which merely aggravate the damage already done, or later developments which frequently add new elements of damage, merely attach themselves to the original cause of action, and do not of themselves become independent causes of action, nor do they revive the cause of action for the original injury, if the same has become barred,' " and concluded that "Since the action was not commenced within one year from the date of the operation, it became barred by section 340, subdivision 3 of the Code of Civil Procedure, requiring that an action for the injury to one by the wrongful act or neglect of another be instituted within that period of time." *Gardner v. Beck* (1922), 195 Iowa 62, 189 N. W. 962, and *Carter v. Harlan Hospital Ass'n* (1936), 265 Ky. 452, 97 S. W. (2d) 9, are to the same effect.

As heretofore pointed out, plaintiff does not contend that either of the later operations or the treatments applied, caused the injury for which the suit is brought. He testified that the numbness or paralysis of his fingers and hand become apparent immediately after the first operation in 1936, and he was apprised by the physician that it was due to a nerve involvement. Subsequent surgery and treatments were calculated to remedy this unfortunate condition, but were resorted to without avail. The complaint is based principally upon allegations that injury or severance of the ulnar and radial nerves in performing the operation caused the irreparable injury, and the evidence clearly indicates that the loss of movement and function of his fingers and hand immediately followed the first operation. Under the weight of authority his cause of action accrued in 1936, and since suit was not instituted until 1941, we think the court properly held that the statute had barred recovery.

In view of these conclusions it is unnecessary to consider the question whether there was any evidence

in the record tending to show that the injuries or disabilities complained of resulted from the alleged negligence or unskillfulness of the defendant.

For the reasons indicated we are of opinion that the court properly instructed the jury to return a verdict for defendant at the close of plaintiff's case, and the judgment of the circuit court is therefore affirmed.

*Judgment affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.