CARMELA TORTORELLO; PLAINTIFF-RESPONDENT, v.
ABRAHAM G. REINFELD, DEFENDANT-APPELLANT.

Argued October 30, 1950—Decided December 11, 1950.

*Mr. William P. Braun* argued the cause for the appellant. *Mr. Frederick C. Vonhof* on the brief.

*Mr. Ira D. Dorian* argued the cause for the respondent (*Messrs. Greenstone & Greenstone,* attorneys).

The opinion of the court was delivered by

ACKERSON, J. This is an action in tort against a physician for alleged malpractice. The complaint, filed in the Law Division of the Superior Court on January 18, 1949, and later amended, contained three counts. The second and third were stricken by the court on defendant's motion and the cause was submitted to the jury on the first count resulting in a verdict in plaintiff's favor for $7,500 on which judgment was accordingly entered. Defendant's appeal therefrom to the Appellate Division has been certified here on our own motion.

The first count alleges that the defendant, a practicing physician specializing in the treatment of ear, nose and throat and in plastic surgery, was engaged by the plaintiff in August, 1946, to perform plastic surgery upon her nose for the purpose of improving her appearance; that in the process of the operation and treatment he was negligent, and because thereof she was disfigured and otherwise injured.

The pretrial order, in conformity with the amended pleadings, expressly limited the issues to "negligence, contributory negligence, assumption of risk, statute of limitations, injuries [and] damages." No disability on the part of the plaintiff, such as would postpone the running of the statute pursuant to *R. S.* 2:24–4, is alleged.

The evidence discloses that the defendant operated on the plaintiff at a hospital on August 6, 1946, for the purpose of removing an enlargement or hump on the bridge of her nose and reducing the length of that organ. On August 9, 1946, she returned to her home, remaining under defendant's care. Several weeks later keloids (excessive scar tissue) and adhesions appeared at the site of the recent operation causing a very "bumpy and irregular shaped nose." On September 26, 1946, the defendant performed a second operation for the removal of these keloids and adhesions. Thereafter the condition of the plaintiff's nose did not improve, she could not breathe through one nostril and more extensive keloids and adhesions developed. Acting upon the defendant's advice, plaintiff then consulted a specialist in New York City who, on October 25, 1946, performed a third operation and removed the keloids and adhesions, at which operation the defendant was present. Thereafter plaintiff continued to visit the defendant at his office two or three times weekly for further medical attention. However, a large keloid reappeared on the left side of her nose and on December 8, 1946, the defendant, advising X-ray treatments, referred his patient to Dr. Henle, a specialist in that field, who immediately began such treatments and continued them until July, 1947. These treatments, as conceded by the plaintiff herself, resulted in the improvement of her condition, although at the time of the trial there was still a disfiguring scar on the right side of her nose and her ability to breathe properly was impaired. Defendant testified that during the period of the X-ray treatments and for a while thereafter the plaintiff from time to time visited his office at his request merely for observation, no treatments were given, and he did not see her after June or July, 1947. Plaintiff claimed, however, that she was under his care and treatment until October, 1947, and was discharged by him in November, 1947.

So much for the timetable of the events with which we are here concerned. As to specific charges of negligence there was evidence from which, if believed, the jury could have

found that the proper and accepted practice for performing this type of plastic surgery is to avoid incising the outerskin of the nose and to that end all of the surgery and every step in the technique is done entirely from within the nose. Further, when the dressing was removed from her nose shortly after the first operation (August 6, 1946), plaintiff observed a cut or slit on the outside of her nose which cut had been drawn together by three sutures, and there were two scars, one on the side and the other at the tip of her nose. This was denied by the defendant, but, if true, it was inferable that an incision had been made through the outerskin of the plaintiff's nose during the first operation contrary to proper surgical practice. Her medical expert testified that the cause of the keloid formation was an incision through the entire thickness of the outerskin of the nose. He also stated that in his opinion the X-ray treatment should have been advised and applied immediately after the first appearance of the keloid formation following the first operation, and "the treatment was late." On the other hand defendant's medical witnesses all testified that he followed accepted medical procedure as to the timing of such treatment.

The probative value of the foregoing opinion of plaintiff's medical witness concerning the timeliness of advising radiological treatment as bearing upon malpractice is questionable in view of the rule pronounced in such cases as *Gramaldi v. Zeglio,* 3 *N. J. Misc.* 669, 672 (*Sup. Ct.* 1925); *Woody v. Keller,* 106 *N. J. L.* 176 (*E. & A.* 1930), and *Hull v. Plume,* 131 *Id.* 511 (*E. & A.* 1944). Nevertheless, assuming its relevancy for the purpose stated, the record before us is completely barren of any evidence of negligence or malpractice on the part of the defendant after the commencement of the X-ray treatments in December, 1946, and it is conceded that they were properly administered and beneficial. Therefore, if the defendant was negligent in any respect it necessarily must have occurred within the period beginning with the first operation on August 6, 1946, and ending with the commencement of the X-ray treatments by Dr. Henle early in December,

1946—more than two years before the commencement of the present action.

Defendant contends on this appeal that the trial judge erred in denying motions for judgment of dismissal made by him at the end of the plaintiff's main case and at the conclusion of the entire case. This argument is based upon two grounds: (1) that no actionable negligence was proven, and (2) the action was barred by the statute of limitations. We find it unnecessary to consider the first of these grounds since in our opinion the second has been amply established.

Our statute of limitations pertaining to "injuries to the person," *R. S.* 2:24–2, provides as follows:

> "All actions for injuries to the person caused by the wrongful act, neglect or default of any person or persons, * * * shall be commenced within two years next after the cause of any such action shall have accrued, and not thereafter."

The present action was started by the filing of the original complaint on January 18, 1949. *Rule* 3:3–1. The inquiry, then, resolves itself into the question: when did plaintiff's cause of action accrue?

Defendant, relying on the case of *Weinstein v. Blanchard,* 109 *N. J. L.* 332 (*E. & A.* 1932)—a malpractice case—where a similar question was answered, insists that the present cause of action accrued at the time of the alleged negligent operation on August 6, 1946, or at the latest when the X-ray treatments were commenced in December, 1946, by an independent specialist in that field, either of which dates was beyond the two-year limitation period prescribed by the statute. The trial judge, in overruling the motion for a judgment of dismissal at the end of the plaintiff's case, stated that "* * * in this case the statute [*R. S.* 2:24–2] did not begin to run until some time in October or November [1947], when, according to the plaintiff, she was last treated, examined, or observed by the defendant."

This ruling is in accord with the position taken by the plaintiff on this appeal. It is grounded upon the philosophy

prevalent in some jurisdictions, that because of the confidential relationship between patient and physician with the natural reliance of the patient on the advice and skill of the physician together with the desirability of affording the latter a reasonable opportunity to correct any mistakes in treatment, the statute of limitations is not considered as beginning to run in a malpractice case until the termination of the treatment or the professional relationship with respect thereto. In other words the treatment, whether operative, post-operative or general, and the employment incident thereto, are considered together as a continuing obligation and, if malpractice occurs at any time within that period, the statute begins to run when the entire treatment ceases whether the treatment rendered after such breach of professional duty is negligent or not.

In consonance with this doctrine the plaintiff insists that the alleged negligent operation on August 6, 1946, and the post-operative treatment by the defendant, whether negligent or not, comprised a single continuous tort and her cause of action accrued when the treatment ended, as she claims, in October or November, 1947.

The principle thus relied upon finds acceptance in the courts of some of our states and is generally referred to as the minority rule. The cases so holding are collated and discussed in the case of *Gangloff v. Apfelbach,* 319 *Ill. App.* 596, 49 *N. E.* 2d 795 (*App. Ct. of Ill.* 1943) (which entertains a different view), and in the annotation appearing in 74 *A. L. R., pp.* 1317-1325.

██ Whatever may have been the wording of the particular statutes involved in the cases espousing the last mentioned doctrine, of which *Gillette v. Tucker,* 67 *Ohio St.* 106, 65 *N. E.* 865, 93 *Am. St. Rep.* 639 (*Sup. Ct. Ohio* 1902), is the most frequently cited, we are unwilling to accept the principle as applicable to the explicit wording of our own statute which provides that an action for wrongful act, neglect or default "shall be commenced within two years next after the cause of any such action shall have accrued, and

not thereafter." This language has received definite interpretation by our courts and we consider it to be firmly settled that by the "accrual" of a cause of action under *R. S.* 2:24–2 is meant the time when a right first arises to institute and maintain an action for the invasion of one's rights against the wrong-doer, and the statutory period is computed from that time. *Fredericks v. Dover,* 125 *N. J. L.* 288, 291 (*E. & A.* 1940) ; *Weinstein v. Blanchard, supra, p.* 337. Any wrongful act or omission resulting in any injury to the person, though slight, for which the law provides a remedy gives rise to a right to institute an action therefor and the cause of action is said to accrue at that time. The statute of limitations attaches at once and commences to run from that time irrespective of the time when the injury is discovered or the consequential damages result. *Fredericks v. Dover, supra; Sullivan v. Stout,* 120 *N. J. L.* 304 (*E. & A.* 1938) ; *Gogolin v. Williams,* 91 *N. J. L.* 266, 267 (*E. & A.* 1917).

Perhaps the best interpretation of the foregoing principle is to be found in the case of *Weinstein v. Blanchard, supra, p.* 337, where the following appears:

> " 'While it is generally true that no man has a right of action against a wrong-doer unless he is personally injured, yet in the case of every violation of the rights of a particular individual, the law ordinarily implies damage, for which a right of action accrues though the damage be but nominal. Therefore as a general rule, where an injury, though slight, is sustained in consequence of the wrongful or negligent act of another and the law affords a remedy therefor, the statute of limitations attaches at once. It is not material that all the damages resulting from the act should have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date. The act itself is regarded as the ground of the action and is not legally severable from its consequences. The statute then begins to run, and not from the time of the damage or discovery of the injury.' "

The court thereupon applied this principle and ruled that "The statute of limitations ordinarily runs against a physician or surgeon for damages due to malpractice from the time of the act of negligence or unskillful treatment, and not from the time of the consequential injury."

In the application of this rule the mere fact that treatment follows or continues after a single act of negligence or breach of duty or that the confidential relationship of patient and physician continues thereafter does not postpone the running of the statute unless the physician or surgeon has been guilty of fraudulent concealment. This is undoubtedly the majority rule with which we are in complete accord. *Gangloff v. Apfelbach, supra; Giambozi v. Peters,* 127 *Conn.* 380, 16 *A.* 2d 833, 835 (*Sup. Ct. of Errors, Conn.* 1940); *Notes:* 74 *A. L. R.* 1317 *et seq.;* 144 *Ibid.* 209 *et seq.;* 54 *C. J. S.* (*Limitations of Actions*), § 174(b), *p.* 142 *et seq.* An exception is ordinarily made, however, where the injurious consequences arise from a continuing course of *negligent* treatment and not from single or isolated acts of negligence or breach of duty. In such a situation the statute does not ordinarily begin to run until the injurious treatment is terminated unless the patient discovered or should have discovered the injury before that time. The malpractice in such cases is regarded as a continuing tort because of the persistence of the physician or surgeon in continuing and repeating the *wrongful* treatment. *Giambozi v. Peters, supra;* 54 *C. J. S.* (*Limitations of Actions*), § 174(b), *p.* 142 *et seq.*

In the case *sub judice,* as already observed, there is no evidence of negligence or breach of professional duty after the X-ray treatments were begun by Dr. Henle early in December, 1946. Hence, we are not concerned here with a continuing tort—such as the continuance of an injurious course of treatment or the continuing neglect to advise a proper course of treatment—after the last mentioned event in the month of December, 1946. Therefore, if the defendant was guilty of any negligent conduct, whether of commission or omission in either the operative or post-operative treatment, it occurred wholly within the period beginning with the first operation on August 6, 1946, and ending on December 8, 1946, when the X-ray treatments were prescribed. Obviously the plaintiff's asserted cause of action must have accrued within the aforesaid period of time and not thereafter. Since

the action was commenced on January 18, 1949, the two-year period of limitation fixed by *R. S.* 2:24–2 had already run out and the action is barred.

█ Our statute is one of repose and the rule above applied is necessary for the preservation of its objectives. As was aptly said in the case of *Gangloff v. Apfelbach, supra:* "Recognition of a contrary rule would permit a plaintiff, afflicted with some malady, to trace that malady to an original cause alleged to have occurred years and years ago. No practicing physician or dentist would ever be safe. The origin of disease is involved in uncertainty at best. While hardships may arise in particular cases by reason of this ruling, a contrary ruling would be inimical to the repose of society and promote litigation of a character too uncertain and too speculative to be encouraged."

█ In reaching this result we have not overlooked plaintiff's further contention, not strongly urged in her brief, that the case presents a basis for the application of the doctrine of equitable fraud such as would suspend the operation of the statute. However, this is not pleaded in reply to the defendant's answer asserting the statute as a defense. Furthermore we find no evidence of fraudulent misrepresentation or concealment by the defendant concerning the existence, extent or result of the plaintiff's injury or of her cause of action, if any. It does not appear that she was kept in ignorance of her injury or prevented from commencing an action for malpractice within the two-year period. In fact, the plaintiff consulted a lawyer of her own choice concerning her rights in June, 1948, several months before the limitation had expired, yet she delayed in filing her complaint until January, 1949, seven months later, when the statutory time had elapsed. Therefore her failure to bring the action in due time is not attributable to any fault but her own. *Cf. Hawkins v. Public Service, etc., Transport,* 137 *N. J. Eq.* 183 (*Ch.* 1945); *Note:* 144 *A. L. R.,* at *p.* 215.

The judgment below is accordingly reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, BURLING and ACKERSON—5.

*For affirmance*—Justices HEHER and WACHENFELD—2.