## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Albert B. Donovan

v.

William Minor Deyerle

June 24, 1963

Case No. A-5529

By JUDGE ALEX H. SANDS, JR.

This matter is before the Court upon defendant's plea of the statute of limitations filed November 9, 1962, and motion to strike bill of particulars and dismiss filed December 28, 1962.

Plaintiff's motion for judgment, filed October 19, 1962, contains the following allegations pertinent to consideration of the plea and motion now before the Court.

1. During November, 1951, defendant recommended to plaintiff and on February 9, 1952, performed an operation upon plaintiff's hip consisting of removal of the ball of the femur and replacing it with an artificial ball; that such type operation was relatively a new type, unproven, dangerous and one in the performance of which defendant was not experienced and that all of these factors were withheld from plaintiff who was given, by defendant, the election between this operation and another which would result in a freezing of the hip; that plaintiff elected the femur ball replacement upon defendant's advice; that not only did defendant not advise plaintiff of the hazards and circumstances of this type operation, but

led him to believe that satisfactory results were to be anticipated.

2. That relying upon defendant's representations, plaintiff elected this type operation over the fusion type.

3. That the operation was a failure due to defendant's negligent manner of performance.

4. That on April 14, 1953, defendant advised plaintiff that his continued discomfort was due to a nerve negligently pinched in the operation.

5. On April 14, 1953, defendant again operated and corrected the nerve condition but that such operation failed to relieve plaintiff's suffering.

6. That on October 19, 1956, defendant advised that the first operation was a failure and advised that the alternate operation, a fusion, be attempted which operation was performed on October 19, 1956.

7. That this operation was negligently performed and that as a result of operative and postoperative negligence of the defendant the fusion broke some seven months later (this would be in May, 1957).

8. That defendant then (May, 1957) applied a cast in an attempt to reunite the fusion but that it again, due to defendant's negligence, broke in June of 1958, at which time plaintiff was again hospitalized by defendant and placed in a cast to reunite the fusion. That this was also negligently performed.

9. That due to defendant's negligence the fusion again broke in December, 1958, that plaintiff was then hospitalized, retreated and assured by defendant that he would recover and be able to return to work.

10. In March, 1959, the fusion again broke and on March 17, 1959, the defendant re-operated and refused the joint at which time plaintiff was assured by defendant of operative success.

11. That in November of 1960, due to defendant's negligent treatment an ailment of an inflammatory nature developed in plaintiff's leg for which he was hospitalized and treated by defendant.

12. That plaintiff is now advised that another fusion operation is necessary.

13. That the defendant was negligent in each and every instance of surgery and postoperative care.

It is believed that this statement presents the sum total of plaintiff's allegations in the broadest possible manner and that most favorable to plaintiff.

The sole issue presented upon the plea is whether recovery for the effects of any negligent act performed by defendant prior to October 19, 1960, (suit was instituted Oct. 19, 1962) is barred by sec. 8-24 of the Code of Virginia of 1950, as amended.

While there is a complete diversity of opinion among the various states as to when a cause of action for malpractice accrues (see the excellent and exhaustive notes found in 144 A.L.R., beginning at page 209 and in 80 A.L.R.2d beginning at page 368), Virginia has always held that any cause of action which sounds in tort, accrues when the wrongful act of negligence takes place and not when the injury occurs or is discovered. *Housing Authority v. Laburnum Corp.*, 195 Va. 827 (1954); *Street v. Consumers Min. Corp.*, 185 Va. 561 (1946); *Pickett v. Aglinski*, 110 F.2d 628 (4th Cir. 1940). This concept, indeed, appears to be conceded by plaintiff's counsel in his filed brief, but his contention is that there is a recognized exception to this rule applicable to causes of action growing out of malpractice and that the case at bar falls under this exception. The exception referred to is the so-called "continuous treatment" theory, which in essence is that where a patient goes under the care and treatment of a physician and where such course of treatment involves a continuous series of operative and accompanying postoperative care, that as to any particular act or acts of negligence which occur during such continuous course of treatment, the statute of limitations is tolled until the termination of such *course* of treatment, i.e., that the beginning of the running of the statute is postponed until the patient is discharged.

This theory, while representing the minority view, finds considerable support in a number of jurisdictions. See two A.L.R. notes, *supra*, and authorities therein reviewed. It is predicated upon different concepts in some jurisdictions upon the theory that the employment of the physician contemplates a continuous service and that treatment and employment should be considered as an indivisible undertaking, *Bush v. Cress*, 178 Minn. 482, 227 N.W. 432 (1929); *Ashmitt v. Esser*, 178 Minn. 82, 226 N.W. 196 (1929), others upon the theory that

the physician has a duty to disclose to the patient the act of negligence at the time of commission and that hence the period of limitations runs only from date completed treatment or discovery by the patient, whichever is the earlier (this upon the basis of concealment) while still others base the theory upon the confidential relationship existing between patient and physician. *Guy v. Schuldt* (Ind.) 138 N.E.2d 891.

Recognized in every jurisdiction is the concept that fraudulent concealment by a physician of the existence of the negligent act under some circumstances defers the commencing of the period of limitations until discovery by the patient although the jurisdictions vary in their interpretations as to what acts amount to such fraudulent concealment as will bring this concept into play. *Cf. Guy v. Schuldt, supra,* (holding that confidential doctor-patient relationship imposed upon doctor duty to disclose) and *Gangloff v. Apfelbach,* (Ill.) 49 N.E.2d 795 (holding a "fixed purpose to conceal" necessary on part of physician).

Before reviewing the Virginia authorities it might be mentioned that *Gangloff v. Apfelbach,* (Ill.) 49 N.E.2d 795, is the most persuasive of all of the outside authorities which the Court has reviewed. Not only is the factual situation there presented fairly close in point to that in the case at bar but the opinion in the case gives an excellent summary of the conflicting views and a discussion of the leading authorities supporting each view and concludes with the holding that the "vast majority" of jurisdictions support the view contended for by the defendant, Deyerle, in the case at bar.

As applied to actions of malpractice the issue here presented is one of first impression in Virginia. The controlling principles, however, appear to have been long established in this state.

(a) *In General.* Virginia has always followed the rule that a right of action in a tort case accrues at the time of the commission of the wrongful or negligent act and not from the time of damage or discovery of the injury. *Street v. Consumers Mining Corp.,* 185 Va. 561 (1946).

(b) *Exception.* The only exception which the Virginia court has recognized to this rule is the "Continuing Negligence" exception adopted in *Wright v. City of Rich-*

*mond*, 146 Va. 835 (1926), and *Richmond v. James*, 170 Va. 553 (1938). Both of these cases stand for the proposition that where there is an initial tortious act and subsequent tortious acts of a continuous nature growing out of the same situation involved in the initial tortious act, the fact that a cause of action under the initial act becomes barred by the statute of limitations does not prevent the enforcement of causes of action arising under subsequent acts (though growing out of the same situation) which are *within* the limitation period. Recoverable *damages*, however, are limited to those sustained *within* the limitation period.

In the *James* case a negligent act of the city occurred in the faulty capping of a gas pipe in plaintiff's home by city personnel on October 9, 1935. Gas continued to escape until December 18 or 23, on one of which dates plaintiff was taken violently ill from the effects of the escaping gas. City Charter required notice of injury within sixty days from occurrence. Notice was given February 4, 1936, which, of course, was more than sixty days after the initial faulty capping. City's defense was that the cause of action growing out of the act of faulty capping being barred by the sixty day notice provision that plaintiff could sue for no injuries resulting therefrom. The court held that the negligence was of a continuing type and that though the original act (faulty capping of Oct. 9) was barred that any injury sustained as a result of the continuing negligence was actionable *provided* such injury itself was sustained within sixty days prior to February 4, 1936, the date of notice. To this extent and to this extent only, the general rule has been modified in Virginia.

(c) *Fraudulent Concealment.* The allegations in the motion for judgment would under no circumstances support any charge of fraudulent concealment on the part of Dr. Deyerle. Whatever the rule might be elsewhere, in Virginia proof of mere silence is not enough. There must be some trick or contrivance upon the part of the defendant which *of itself* is designed to exclude suspicion and to prevent inquiry upon the part of the person aggrieved. *Pickett v. Aglinski*, 110 F.2d 628 (4th Cir. 1940).

Suit was instituted on October 19, 1962. Plaintiff could therefore recover damages only for injuries actually sustained *after* October 19, 1960, which either (a) were

due to some negligent act of defendant committed *after* October 19, 1960, or (b) were due to some negligent act or series of negligent acts of defendant which formed a pattern of continued negligence extending past October 19, 1960.

Plaintiff cannot, therefore, recover for injuries flowing from any of the specific acts enumerated in the motion for judgment, occurring prior to October 19, 1960, but should the evidence introduced show that all of these acts resulted in a course of continuing negligent conduct in the treatment of plaintiff and that such course of conduct extended past October 19, 1960, then plaintiff could recover for such injuries resulting therefrom *after* October 19, 1960.

The difficulty with the plaintiff's case from a pleading standpoint is that he has utterly failed up to this time to specify wherein the acts of alleged negligence lay. Because a treatment is unsuccessful raises no presumption that it was negligently administered. Unless, therefore, plaintiff can specify what and when defendant either failed to do some act which he should have done or did some act which he should not have done, defendant's motion to dismiss will have to be sustained.

Plaintiff will be accordingly given until July 1st to file an amended bill of particulars, giving the particulars indicated in defendant's motion to strike bill of particulars and dismiss.