**Robert J. GOODMAN, Individually and as Executor of the Estate of Florence L. Goodman, Plaintiff,**

v.

**MEAD JOHNSON & COMPANY, Defendant.**

**Civ. A. No. 271-71.**

United States District Court, D. New Jersey.

Dec. 30, 1974.

William R. Morris, Newark, N. J., for plaintiff.

Bernard Chazen, Englewood, N. J., for defendant.

OPINION

STERN, District Judge.

This is a diversity action. New Jersey resident Robert Goodman, as Executor of his wife's estate and individually, sues Mead Johnson & Co., a Delaware corporation, for injuries to Florence Goodman allegedly caused by defects in a product manufactured by the defendant.

The factual matrix of the complaint reveals that Florence Goodman used an ethical drug, Oracon,[1] which was manufactured by the defendant. During her use of Oracon, she experienced a swelling of the leg, later diagnosed as thrombophlebitis, and a lump in the right breast, later diagnosed as cancer. Florence Goodman thereafter brought suit alleging: (1) that the defendant was negligent in publicly distributing its product without proper or adequate warning on the face of the product sold of the harmful side effects and contraindications; and (2) that the defendant breached its warranty of merchantability when it sold a defective product. After the institution of suit, Florence Goodman died and her husband, as Executor of her estate, was substituted in her place.[2] Robert Goodman, in his in-

---

1. Oracon is a birth contraceptive drug. It appears that it was prescribed to Florence Goodman by her physician for the treatment of eczema. (Florence Goodman Dep., pp. 23, 27)

2. At the March 26, 1974 status conference, the Court was informed that Florence Goodman had died. The Court then granted plaintiff leave to substitute the representative of Florence Goodman's estate as the real party in interest pursuant to Rule 17 of the Federal Rules of Civil Procedure. On June 25, 1974, plaintiff filed a second amended complaint which substituted Robert Goodman, Executor of Florence Goodman's estate, for Florence Goodman. However, plaintiff also amended the complaint to in-

clude allegations of wrongful death. This action was undertaken without leave of court or written consent of the adverse party as required by Rule 15 of the Federal Rules of Civil Procedure. Florence Goodman died May 22, 1973. (Plaintiff's Answer to Defendant's Supplementary Interrogatory No. 1(a)) Plaintiff had over one year after the death of Florence Goodman to allege these new causes of action. Now, on the eve of trial of this three-year old case, after the completion of discovery, he attempts to inject new causes of action into this lawsuit through an improper use of the Federal Rules of Civil Procedure. To permit plaintiff to amend his complaint will undoubtedly cause the defendant to suf-

dividual capacity, sues the defendant for damages per quod.

The instant motion by defendant is for summary judgment premised upon the New Jersey State statutes of limitations,[3] which, in this diversity case, control.[4]

The applicable statute of limitations on the negligence claims is embodied in N.J.S.A. 2A:14–2, which states:

> Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued.

■ The two-year limitation of N.J.S.A. 2A:14–2 is also applicable to plaintiff's claim of breach of the implied warranty of merchantability. Although breach of warranty claims sound in contract, the New Jersey courts have not applied the limitation of actions provision, N.J.S.A. 12A:2–725, which relates to breach of any contract for sale whenever damages are sought for personal injury. Instead, the New Jersey courts have construed the time limitations of N.J.S.A. 2A:14–2 to apply to all personal injury claims irrespective of whether they fall within the traditional classifications of tort or contract.[5] Heavner v. Uniroyal, Inc., 63 N.J. 130, 305 A.2d 412 (1973).

The original complaint was filed on February 25, 1971. Plaintiff's decedent used defendant's drug from April 4, 1967 to June 19, 1967. (Florence Good-

man Dep., pp. 17, 21) Thus, this action was commenced more than three and one-half years after the last use of defendant's product.

The law of New Jersey is clear:

> . . . in an action for personal injuries, the two-year statute, computed from the date of occurrence of the injuries (or in some situations the date of their discovery), would govern, whether the causes of action were pleaded in tort (negligence) or for breach of warranty in connection with a sale of goods or for violation of contract. . . .

Heavner v. Uniroyal, *supra*.

Hence, if defendant's product caused injury to plaintiff's decedent, the injury occurred on or before June 19, 1967. Under the normal statute of limitations analysis, plaintiff, having commenced suit over three years after the accrual of the cause of action, would be barred from pursuing a remedy in court. However, the New Jersey courts have adopted the "Discovery Rule" as an exception to the mechanical application of the personal injury statute of limitations. This doctrine provides:

> . . . in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by reason of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim.

\* \* \* \* \* \*

---

fer prejudice in its defense of this suit. Discovery, now completed, will have to be re-instituted and the trial date of this aged case will be delayed again.

"As we see it, a shift in theory should be denied, even in the absence of prejudice, where the party seeking to impose it has been guilty of flagrant abuse, bad faith, or truly inordinate and unexplained delay." Matlack, Inc. v. Hupp Corporation, 57 F.R.D. 151, 163 (E.D.Pa.1972).

Accordingly, on this motion the Court shall only consider the allegations of the complaint as stated in the first amended complaint filed on June 10, 1971. However, the Court will allow Robert Goodman, Executor

of the estate of Florence Goodman, to be substituted for Florence Goodman.

3. The Court notes that this is defendant's fourth summary judgment motion based upon the statutes of limitations. The previous identical motions were denied without prejudice to the right of the defendant to renew at a later date.

4. Gleason v. United States, 458 F.2d 171, 174 (3rd Cir. 1972).

5. N.J.S.A. 2A:14–2 also applies to the per quod claims. Rex v. Hutner, 26 N.J. 489, 140 A.2d 753 (1958).

The discovery rule is essentially a rule of equity. It has been said that in equity lies its genesis. Owens v. White, 342 F.2d 817, 820 (9th Cir. 1965). Like so many other equitable doctrines it has appeared and is developing as a means of mitigating the often harsh and unjust results which flow from a rigid and automatic adherence to a strict rule of law. On the face of it, it seems inequitable that an injured person, unaware that he has a cause of action, should be denied his day in court solely because of his ignorance, if he is otherwise blameless. Yet such is the result that must follow if the years of the statute are to be inexorably calculated from the moment of the wrong, whether or not the party aggrieved knows or has reason to know that he has a right of redress. Parenthetically, we note that the ignorance of which we speak may be of more than one kind. A person may, for instance, be unaware that he has sustained injury until after the statute of limitations has run. This was true in both New Market Poultry Farms, Inc. [New Market Poultry Farms, Inc. v. Fellows, 51 N.J. 419, 241 A.2d 633] and *Diamond, supra* [Diamond v. N. J. Bell Telephone Co., 51 N.J. 594, 242 A.2d 622], where, in each case, the fact of the wrong lay hidden until after the prescribed time had passed. In other cases damage may be all too apparent, but the injured party may not know that it is attributable to the fault or neglect of another. . . .

It may also be unjust, however, to compel a person to defend a law suit long after the alleged injury has occurred, when memories have faded, witnesses have died and evidence has been lost. After all, statutes of limitations are statutes of repose and the principal consideration underlying their enactment is one of fairness to the defendant. Developments in the Law-Statutes of Limitations, 63 Harv.L.Rev. 1177, 1185 (1950). So in each case the equitable claims of opposing parties must be identified, evaluated and weighed. Where, as is often the case, they cannot be wholly reconciled, a just accommodation must be reached.

Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973).

In resisting the summary motion, plaintiff has invoked the discovery exception to the statute of limitations.[6] The facts as to when the decedent first discovered her alleged injuries are not in dispute. The date of discovery of the thrombophlebitis injury has been established as June 19, 1967 by the decedent's deposition. (Florence Goodman Dep., p. 21).

It is undisputed that on June 19, 1967, Mrs. Goodman was aware that her thrombophlebitis injury existed, and the date of this discovery was also more than three years before she commenced

---

**6.** *Lopez* sets out the procedure to be followed by the New Jersey state courts in applying the discovery rule exception to the statute of limitations:

It is not every belated discovery that will justify an application of the rule lifting the bar of the limitations statute. The interplay of the conflicting interests of the competing parties must be considered. The decision requires more than a simple factual determination; it should be made by a judge and by a judge conscious of the equitable nature of the issues before him.

The determination by the judge should ordinarily be made at a preliminary hearing and out of the presence of the jury. Generally the issue will not be resolved on affidavits or depositions since demeanor may be an important factor where credibility is significant. Where credibility is not involved, affidavits, with or without depositions, may suffice; it is for the trial judge to decide. The issue will be whether or not a party, either plaintiff or counterclaimant, is equitably entitled to the benefit of the discovery.

300 A.2d at 567. Footnotes omitted.

This Court invited both parties to utilize oral testimony at the summary judgment motion hearing in order to supplement the affidavits and depositions previously filed; however, neither party availed itself of this opportunity. Cf., Burnham Chemical Co. v. Borax Consolidated, Ltd., 170 F.2d 569, 573 (9th Cir. 1948), cert. denied 336 U.S. 924, 69 S.Ct. 655, 93 L.Ed. 1086 (1949).

suit. The second pivot of the *Lopez* discovery exception is: At what time did the claimant know, or in the exercise of due diligence should she have discovered, that she had an actionable claim.

The deposition of Mrs. Goodman reveals that medical personnel, upon her entry into the hospital on June 21, 1967, had repeatedly told her not to take Oracon because of its correlation with thrombophlebitis. (Dep. pp. 10–11)

Q. You say you continued to use the Oracon even when you were in the hospital with the thrombophlebitis?

A. No.

Q. I misunderstood you.

A. No.

Q. *Who was it told you to stop taking Oracon?*

A. *The doctor's nurse, Dr. Schwartz's nurse.*

Dep. p. 21 (Emphasis added).

\* \* \* \* \* \*

Q. Now, when you stopped taking The Pill after you had called the nurse, did you discuss this with Dr. Goldbas, the fact that you had been on The Pill?

A. Yes.

\* \* \* \* \* \*

Q. *Did he confirm that you should not take The Pill anymore?*

A. *Oh, yes; oh, yes.*

Q. *Did he tell you you shouldn't take The Pill anymore?*

A. *I can't really remember his words, but I would imagine what he said was there had been cases of correlation between taking The Pill and phlebitis.*

Q. So that to the best of your recollection he said something of this type, although you can't tell me his exact words?

A. Right. There certainly was no question of continuing with The Pill. In fact, in fact, he said—he gave me something in the hospital, in fact, for my hands, estrogen, or something, that wasn't The Pill, but had some of the composition of The Pill. It was just an ointment.

Q. To continue the treatment for the skin?

A. For the hands, but not in a pill.

Q. Not in The Pill form?

A. Right.

Dep. pp. 25–26 (Emphasis added)

Plaintiff also has not denied admission #7 which was served on April 27, 1972:

7. The plaintiff knew in June 1967 that there might be a relationship between her thrombophlebitis and her taking of Oracon.

■ Pursuant to Rule 36 of the Federal Rules of Civil Procedure, admissions which are not denied are deemed admitted, and may form a proper basis for summary judgment. Jackson v. Riley Stoker Corp., 57 F.R.D. 120, 122 (E. D.Pa.1972).

■ Plaintiff has not demonstrated that he is entitled to the protection of the discovery rule. Indeed, the defendant has firmly established, via the deposition of the decedent, that after she discovered her injury and its correlation with the defendant's allegedly defective drug, she brought no suit for three and one-half years, twenty months after the statute had run.

Plaintiff also seeks damages for Mrs. Goodman's injuries from cancer allegedly caused by defendant's drug. The Court reiterates that it was on or about June 19, 1967 that the decedent last utilized the defendant's drug. Mrs. Goodman's deposition reveals that the first signs of cancer were discovered by her in December, 1968 (Dep. p. 48). Plaintiff contends, however, that discovery of the cancer should be dated as of the day that decedent's biopsy was reported malignant, February 27, 1969, rather than the date of the discovery of symptoms which led to the surgery.

This issue is academic because the New Jersey discovery rule commands that the date which governs the thrombophlebitis claim also governs the cancer

claim, for on that date, June 19, 1967, plaintiff's decedent knew she was injured and that she might have a claim for injuries against the defendant. Although it is possible that she did not know the full extent of her injuries at that time, the allegedly wrongful act of the defendant gives the decedent but one cause of action for which only one action can be maintained. Smith v. Red Top Taxicab Co., 111 N.J.L. 439, 168 A. 796 (E. & A. 1933). Any later discovery of additional injuries by her did not create any new cause of action. If the rule were otherwise, there would be no limitation on such suits since a known act of negligence may be the proximate cause of some injuries which may not manifest themselves until many years after the injured party had originally discovered the existence of a claim to relief. The equitable discovery rule exception to statutory limitations on suits was not intended to go so far.

As one New Jersey court has aptly stated:

> We find no authority to support the trial judge's conclusion that lack of knowledge of the extent of the injury tolls the running of the statute. Quite to the contrary, Tortorello v. Reinfeld, *supra*, [6 N.J. 58, 77 A.2d 240] states that any wrongful act resulting in an injury to a person, *though slight*, gives rise to a right to institute an action and the cause of action accrues at that time. 6 N.J. at 65, 77 A.2d 240.

Rankin v. Sowinski, 119 N.J.Super 393, 291 A.2d 849 (App.Div.1972).

We must also note that the decedent engaged an attorney, now deceased, to represent her in this matter. Although the precise date when she engaged legal representation is not available, correspondence in the deceased attorney's file definitely places the initial engagement prior to June 11, 1968.[7] (Morris Dep. pp. 26–28) As noted, this action was not filed until February 25, 1971, two years and eight months after decedent engaged counsel to sue.

There is nothing in the record to contradict the evidence that the decedent knew of her injury and knew, or by an exercise of reasonable diligence or intelligence should have discovered, that she had a claim against the defendant on or about June 19, 1967.

Furthermore, on the undisputed facts herein plaintiff cannot avail himself of the discovery rule to escape the bar imposed by the statute of limitations.

There is no dispute, based on any contested facts, that plaintiff's cause of action accrued on June 19, 1967. Since suit was not instituted until February 25, 1971, approximately three and one-half years later, it is barred by the statute of limitations.

Accordingly, summary judgment will be entered for the defendant.

Counsel for the defendant will please prepare and submit, on notice, an appropriate order within ten (10) days.

No party shall recover costs herein.

---

7. Another letter dated November 18, 1969 was produced at the Morris deposition. The letter indicates that plaintiff's decedent fully recognized her claim against the defendant. Although the November 18, 1969 letter was written within two years of the filing of this suit, it clearly demonstrates that the decedent's engagement of her first attorney prior to June, 1968 was directed at the prosecution of the instant suit.

Q. Mr. Morris, in answers to interrogatories in this matter you indicated that you were consulted in at a certain date. Now, do you have records which establish when you were consulted in this matter?

A. I did not state to my knowledge in the answers to interrogatories that I was retained on a certain date, but I did approximate the date as about November 3, 1969.

Q. Now, on what basis did you approximate that?

A. I received a letter from Mrs. Goodman dated November 18, 1969, wherein she stated:

'Enclosed is a letter from Mr. Krin, an advertisement for a book that sounds as if it supports my view of " 'The pill.' " And the letter evidently is signed by Alan Krin in behalf of the YM–YMA, Essex County, dated November 10, 1969.'

Morris Dep. p. 23.