534 F.2d 566
 Florence L. GOODMAN, and Robert J. Goodman, individually and
as Executor of the Estate of Florence L. Goodman, Deceased
v.
MEAD JOHNSON & COMPANY et al.
Appeal of Robert J. GOODMAN, individually and as Executor of
the Estate ofFlorence L. Goodman.
 No. 75-1333.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6) Dec. 9, 1975.
Decided April 2, 1976.
 
 William R. Morris, Newark, N. J., for appellant.
 Bernard Chazen, Englewood, N. J., for appellee.
 Before ADAMS, GIBBONS and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 This is an appeal from an order in a diversity case granting defendant's motion for summary judgment.[1] The original plaintiffs were Florence L. Goodman and her husband, Robert J. Goodman. While the action was pending Florence Goodman died, and Robert Goodman, as executor of her estate, was substituted as the real party in interest pursuant to Rule 17(a), Fed.R.Civ.P. The defendant is Mead Johnson & Company, the manufacturer of the estrogen compound Oracon, which Florence Goodman used from April 4 through June 19, 1967 and which plaintiff alleges caused the injuries at issue in this case. The complaint was filed on February 25, 1971, more than three years and eight months after the last use of Oracon. The district court held that the New Jersey two year statute of limitations applicable to personal injuries, N.J.S.A. 2A:14-2, barred the various claims asserted in this case, even taking into account that state's "Discovery Rule" exception.[2] Because there are genuine issues of material fact as to the date of discovery of the several claims against Mead Johnson which could not be resolved on a motion for summary judgment, we reverse.
 
 I. Plaintiff's Claims
 
 2
 Originally the plaintiffs asserted claims for negligence and breach of implied warranty of fitness for intended use, claiming:
 
 
 3
 (1) on behalf of Florence Goodman that use of Oracon caused thrombophlebitis;
 
 
 4
 (2) on behalf of Florence Goodman that use of Oracon caused carcinoma of the right breast resulting in a mastectomy;
 
 
 5
 (3) on behalf of Robert Goodman, an action per quod consortium amisit.
 
 
 6
 After his wife's death on May 22, 1973, Robert Goodman, with the court's permission, filed an amended complaint in which he substituted himself, as executor of his wife's estate, as a plaintiff. However, in the amended complaint he also included a wrongful death claim under N.J.S.A. 2A:31-1 et seq.
 
 
 7
 Thus, besides the decedent's thrombophlebitis and cancer personal injury claims and Robert Goodman's per quod claim there was before the court a statutory wrongful death claim. The court's rulings on these claims are challenged on appeal.
 
 II. The Wrongful Death Claim
 
 8
 The district court disposed of the wrongful death claim in a footnote as follows:
 
 
 9
 This action was undertaken without leave of court or written consent of the adverse party as required by Rule 15 of the Federal Rules of Civil Procedure. Florence Goodman died May 22, 1973. (Plaintiff's Answer to Defendant's Supplementary Interrogatory No. 1(a)). Plaintiff had over one year after the death of Florence Goodman to allege these new causes of action. Now, on the eve of trial of this three-year old case, after the completion of discovery, he attempts to inject new causes of action into this law suit through an improper use of the Federal Rules of Civil Procedure.
 
 
 10
 To permit plaintiff to amend its complaint will undoubtedly cause the defendant to suffer prejudice in its defense of this suit. Discovery, now completed, will have to be re-instituted and the trial date of this aged case will be delayed again. . . . 388 F.Supp. at 1071-72 n.2.[3]
 
 
 11
 This reasoning for relegating the plaintiff to a separate lawsuit to assert his wrongful death claim is completely unsatisfactory. Since the liability issues in this survivor's wrongful death action would be identical to those involved in the personal injury claims, the only possible "prejudice" to Mead Johnson if the amendment were permitted would be the necessity for further discovery regarding the separate items of damage recoverable under N.J.S.A. 2A:31-5[4] and the persons entitled to such damages under N.J.S.A. 2A:31-4.[5] The court undoubtedly has a substantial interest in disposing of old cases. But that interest is not so great as to require a litigant to initiate a separate lawsuit on a wrongful death claim growing out of the same transactions giving rise to the pending causes of action. Thus, Goodman urges that the refusal of the district court to permit the amendment in the circumstances of this case where there would be no substantial prejudice to the adverse party and there is no evidence that the recent assertion of the wrongful death claim is a dilatory trial maneuver was an abuse of discretion.[6]
 
 
 12
 A conclusion that the court should not have refused to permit the amendment, however, would not end the inquiry because a question would remain whether or not the wrongful death action is time-barred. The New Jersey wrongful death action has a separate statute of limitations, N.J.S.A. 2A:31-3, which provides that:
 
 
 13
 Every action brought under this chapter shall be commenced within 2 years after the death of the decedent, and not thereafter.
 
 
 14
 The amended complaint in this case was filed on June 25, 1974, within two years of Mrs. Goodman's death. But this fact alone does not mean that the wrongful death claim is timely. While the New Jersey courts have recognized that the survivor's claim under the Wrongful Death Act is an independent cause of action with its own limitations period and not a derivative of the decedent's personal injury claim, they have placed a gloss on the literal language of N.J.S.A. 2A:31-1 and N.J.S.A. 2A:31-3 inextricably linking the two. According to this gloss a cause of action under the Wrongful Death Act does not vest in the survivor if the decedent died after the expiration of the two year statutory period for commencing a personal injury action without having done so.[7] Thus, the viability of the wrongful death action in this case turns on whether or not Mrs. Goodman's personal injury action was time-barred when it was filed. If it was, then the wrongful death action was also barred even though brought within the time permitted by N.J.S.A 2A:31-3. If it was not, the wrongful death claim was timely and should be heard. Redick v. Rohm & Haas Co., supra. We turn, then, to the New Jersey law on limitations of personal injury actions.
 
 
 15
 III. The New Jersey Personal Injury Statute of Limitations
 
 
 16
 and the "Discovery Rule"
 
 N.J.S.A. 2A:14-2 provides that:
 
 17
 Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued.
 
 
 18
 Whether the plaintiff asserts a legal theory of negligence or of breach of warranty, this statute covers all personal injury claims.[8] The same statute applies to a husband's per quod claim, which is only maintainable because of injury to his wife.[9] But the statute is silent as to when "the cause of any such action shall have accrued." In Fernandi v. Strully, 35 N.J. 434, 173 A.2d 277 (1961), the Supreme Court of New Jersey first announced that the two year statute of limitations on a medical malpractice action did not begin to run when the negligence occurred, but commenced instead when the plaintiff knew or had reason to know of the presence in his body of a post-operative foreign object. But the "discovery" rule soon evolved, extending both outside the malpractice field and to the point where the statute did not begin to run until the injured party knew, or reasonably should have known, not only of the injury but also of the basis for an actionable claim. This development is traced in Justice Mountain's opinion in Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973).[10]
 
 
 19
 In this case it is undisputed that Mrs. Goodman was aware she had thrombophlebitis in June of 1967 and was aware she had cancer after a biopsy on February 27, 1969. Thus, at least as to the thrombophlebitis claim, the critical inquiry in determining when "the cause of any . . . action shall have accrued" against Mead Johnson for Mrs. Goodman's personal injuries is when she knew, or reasonably should have known, that she had a basis for such a claim. Even then the application of the "discovery" rule is not automatic. As Justice Mountain emphasized in Lopez v. Swyer:
 
 
 20
 The issue will be whether or not a party, either plaintiff or counterclaimant, is equitably entitled to the benefit of the discovery rule. All relevant facts and circumstances should be considered. The determinative factors may include but need not be limited to: the nature of the alleged injury, the availability of witnesses and written evidence, the length of time that has elapsed since the alleged wrongdoing, whether the delay has been to any extent deliberate or intentional, whether the delay may be said to have peculiarly or unusually prejudiced the defendant. The burden of proof will rest upon the party claiming the indulgence of the rule.
 
 
 21
 62 N.J. at 275-76; 300 A.2d at 567-68 (footnote omitted).
 
 
 22
 The district court did not reach any of these equitable considerations. Instead, it granted summary judgment on both personal injury claims and on Mr. Goodman's per quod claim, because it found that Mrs. Goodman knew or should have known that she had a claim against Mead Johnson for the thrombophlebitis on or about June 19, 1967.
 
 
 23
 It is significant for our consideration of the propriety of that ruling that under New Jersey law the issue of when the discovery of an actionable claim occurred is a question of fact for the court and not for the jury. Again borrowing Justice Mountain's expression in Lopez v. Swyer:
 
 
 24
 It is true that the time of discovery is a question of fact, and so could be left to the jury. But, as we have indicated, the matter does not rest there. It is not every belated discovery that will justify an application of the rule lifting the bar of the limitations statute. The interplay of the conflicting interests of the competing parties must be considered. The decision requires more than a simple factual determination; it should be made by a judge and by a judge conscious of the equitable nature of the issue before him.
 
 
 25
 The determination by the judge should ordinarily be made at a preliminary hearing and out of the presence of the jury. (footnotes omitted).
 
 
 26
 62 N.J. at 274-75, 300 A.2d at 567.
 
 
 27
 If the district court in this diversity case was required to make the factual determination with respect to the time of discovery, even on disputed facts, our scope of review would obviously be quite different than if we were merely reviewing the disposition of a summary judgment motion. Assuming the district court applied the correct law, we would review the court's factual findings by the clearly erroneous standard of Rule 52(a), Fed.R.Civ.P., rather than the genuine issue as to any material fact standard of Rule 56(c), Fed.R.Civ.P. Thus, we must turn to the effect of Lopez v. Swyer, supra, in a diversity case.
 
 
 28
 IV. Lopez v. Swyer and Byrd v. Blue Ridge Rural Electric
 
 
 29
 Cooperative, Inc.
 
 
 30
 In announcing the rule in Lopez v. Swyer, supra, that the time of discovery is a question of fact to be decided by the court rather than the jury, the New Jersey Supreme Court pointed to cases antedating the 1947 New Jersey Constitution in which the then separate Chancery Court entertained suits to enjoin the plea of the statute of limitations in actions at law where some conduct of the defendant in the legal action rendered it inequitable that he be allowed to avail himself of that defense.[11] These cases, while they provide a persuasive historical analogy for the Lopez discovery rule proceeding, do not suffice to decide the quite different issue of the respective roles of judge and jury in the federal courts bound by the strictures of the seventh amendment. In the first place, even if prior to 1938, the effective date of the Federal Rules of Civil Procedure which abolished the procedural distinctions between actions at law or in equity, federal equity courts entertained actions to enjoin pleas of the statute of limitations at law based upon the inequitable conduct of the party asserting it, such cases would not control our disposition of this action, for the New Jersey discovery rule does not depend at all upon the conduct of the party asserting the defense, but rather upon the state of knowledge of the party asserting the claim. Moreover, the statute of limitations in the federal courts is a traditional legal defense. See Fed.R.Civ.P. 8(c). That this defense would be decided in New Jersey courts by the judge rather than by the jury is not dispositive of the manner in which it should be decided in a federal court.
 
 
 31
 In Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), a diversity negligence case, the defendant asserted that it was the plaintiff's employer under South Carolina law, and consequently that the exclusive remedy provision of that state's workmen's compensation statute barred the suit. In the South Carolina courts the statutory employer issue was passed upon by the court, not by the jury. The Supreme Court held that despite the South Carolina rule the fact issue whether the defendant was a statutory employer must in the federal court be decided by the jury. Departing from what had theretofore been a somewhat mechanical application of state rules of decision under the rubric "outcome determinative", the Court made the following interest analysis:
 
 
 32
 Thus the inquiry here is whether the federal policy favoring jury decisions of disputed fact questions should yield to the state rule in the interest of furthering the objective that the litigation should not come out one way in the federal court and another way in the state court. . . .
 
 
 33
 . . . The trial judge in the federal system has powers denied the judges of many States to comment on the weight of evidence and credibility of witnesses, and discretion to grant a new trial if the verdict appears to him to be against the weight of the evidence. We do not think the likelihood of a different result is so strong as to require the federal practice of jury determination of disputed factual issues to yield to the state rule in the interest of uniformity of outcome. (footnote omitted). 356 U.S. at 538, 540, 78 S.Ct. at 901, 2 L.Ed.2d at 963.
 
 
 34
 Accord, Magenau v. Aetna Freight Lines, 360 U.S. 273, 79 S.Ct. 1184, 3 L.Ed.2d 1224 (1959). Nor is the state court's designation of its rule as "equitable" controlling in the federal court. Simler v. Conner, 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691, 692 (1963) (per curiam).
 
 
 35
 Under Lopez v. Swyer, supra, New Jersey places the burden of proof on the issue of time of discovery on the party claiming the benefit of the rule. Even if the factual determination is made by a federal jury rather than by the court, the allocation of burden of proof would follow the state practice. Palmer v. Hoffman, 318 U.S. 109, 117, 63 S.Ct. 477, 482, 87 L.Ed. 645, 651 (1943). 2A J. Moore, Federal Practice P 8.27(2) at 1847 (2d ed. 1975). Thus, the area of conflict between state and federal policies is quite narrow.
 
 
 36
 When the New Jersey Supreme Court in Lopez v. Swyer, supra, gave content to the "shall have accrued" language of N.J.S.A. 2A:14-2, and relegated decision of the issue of discovery of the cause of action to the court rather than to the jury, it based its choice upon careful consideration of competing state policies.[12] One set of policies favored repose, while another favored a reasonable opportunity for an injured party to make an intelligent decision regarding suit. In concluding that these conflicting policies could in individual instances best be resolved by a court rather than a jury, however, the New Jersey Supreme Court did not suggest that this judgment was so intimately bound up with the merits of the discovery rule itself that the effect of the rule would be negated in any way if another method of fact finding were resorted to. Indeed, Justice Mountain's opinion discloses that the court rather than the jury was chosen to make the necessary factual determination in a discovery rule proceeding primarily for reasons of convenience and efficiency.[13] Relegating the Lopez v. Swyer determination to the court rather than the jury, of course, permits its early resolution, before the expenditure of legal and judicial resources in the discovery aspects of the merits of the case. It is true that the court spoke of equitable considerations which might influence the judge's decision.[14] But an adequate accommodation of any New Jersey interests in the judicial determination of those equitable considerations can be accomplished by submitting the concomitant fact issues to the jury on special interrogatories, while reserving to the court the decision with respect to the legal effect of those facts so determined.
 
 
 37
 We conclude that as with the "statutory employer" defense in Byrd v. Blue Ridge Electric Cooperative, Inc., supra, the federal policy favoring jury decisions of disputed fact questions must prevail over the state practice of allocating to the court the decision as to the time of discovery of the cause of action. Thus, if there are any disputed issues of fact, we cannot affirm their resolution by the court on the authority of Lopez v. Swyer,supra. We must review by the standard of Rule 56, Fed.R.Civ.P.
 
 V. The Rule 56 Motion
 
 38
 Rule 56 allows the trial court to grant summary judgment if it determines from its examination of the allegations in the pleadings and any other evidential source available that no genuine issue as to a material fact remains for trial, and that the moving party is entitled to judgment as a matter of law. The purpose of the rule is to eliminate a trial in cases where it is unnecessary and would only cause delay and expense.[15] On review the appellate court is required to apply the same test the district court should have utilized initially. Inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion. The non-movant's allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt.[16]
 
 
 39
 In support of its motion for summary judgment Mead Johnson claimed that Mrs. Goodman had knowledge or should have had knowledge of an actionable claim against it in June of 1967. At that time she was hospitalized for thrombophlebitis. Mrs. Goodman's deposition discloses that while she was hospitalized Dr. Harold Schwartz, who had prescribed Oracon, apparently for its estrogen content, as a treatment for eczema, advised her to stop using it, and mentioned that "there had been cases of correlation between taking The Pill and Phlebitis." (Florence Goodman deposition at 25). In addition, Mead Johnson had served requests for admission, including request No. 7:
 
 
 40
 The plaintiff knew in June 1967 that there might be a relationship between her thrombophlebitis and her taking Oracon.
 
 
 41
 This request for admissions was not denied, and for purposes of the motion for summary judgment was properly deemed admitted under Rule 36(a).[17] Finally, there was evidence in the form of a deposition of Goodman's present attorney, suggesting that Mrs. Goodman had consulted another attorney about a suit against Mead Johnson as early as June 11, 1968 (Morris deposition at 26-28). The district court fixed the date of the thrombophlebitis discovery as June of 1967. The court then concluded that this date also fixed the time of discovery of the cancer claim and Mr. Goodman's per quod claim. We address these conclusions in reverse order.
 
 A. The Per Quod Claim
 
 42
 Plainly the present record will not support a summary judgment that Mr. Goodman discovered that he had a per quod claim against Mead Johnson for injury to his wife in June of 1967 or at any other time more than two years before the filing of the complaint. The district court did not suggest otherwise. The opinion simply does not deal with the husband's separate per quod claim. Summary judgment could be sustained on this claim only if, assuming the wife's claim were barred, the same bar applied, as a matter of law, to him. The precise issue of the application of the discovery rule to a per quod claim has not been discussed in any New Jersey case which has been called to our attention. As we pointed out above[18] the two year personal injury statute of limitations applies to the husband's per quod claim. But it does not follow that its application to him, and in particular the application of the discovery rule to him, depends on the date of his wife's discovery rather than the date of his own. Although it is dependent upon an actionable wrong having been committed against his wife, a husband's per quod claim is independent from and not a derivative of her personal injury claim. He is suing in his own right for an injury to his relational interest in his wife and for his out-of-pocket expenses.[19] Since his action is independent, the courts of New Jersey would, we are convinced, require a separate determination of the date of his discovery of a claim against Mead Johnson. Thus, the summary judgment barring the per quod claim cannot stand.
 
 B. The Cancer Claim
 
 43
 The district court held that the cancer claim was barred by virtue of the discovery in June of 1967 of the thrombophlebitis claim. The court's theory was that by looking to separate dates of discovery it would be permitting the splitting of a cause of action for a single personal injury. The rule against the splitting of causes of action in New Jersey is well settled.[20] But it has no relevance to the cancer claim pleaded here unless we assume that the thrombophlebitis of the leg and the carcinoma of the breast are the results of exposure to an identical risk. There is no evidence whatsoever that the thrombophlebitis and the carcinoma were the product of the same chain of causality. Certainly plaintiff contends that the two separate injuries were caused independently by the same drug. At least at this stage of the proceedings, we cannot hold that Mead Johnson exposed Mrs. Goodman to a single risk resulting in separate manifestations of injury. The duty of a manufacturer to use care and to issue appropriate warnings is not identical with respect to the risk of circulatory ailments and with respect to the risk from carcinogenic substances. A warning about one risk probably would be irrelevant to the other. The testing required to detect one risk would be quite different from that required to detect the other.
 
 
 44
 On this record there is a fact issue as to whether Mrs. Goodman knew she might have a claim against Mead Johnson for her breast cancer until some time within two years of the filing of the complaint. Indeed the biopsy did not take place until February 27, 1969 and the complaint was filed within two years thereafter. Thus, the award of summary judgment barring the estate's claim for Mrs. Goodman's breast cancer cannot stand.
 
 C. The Thrombophlebitis Claim
 
 45
 The case for summary judgment on the thrombophlebitis claim is certainly stronger than on either the per quod claim or the cancer claim. Mrs. Goodman knew in June of 1967 that she had thrombophlebitis. The request for admissions establishes, as well, that she knew then there might be a relationship between the disease and her use of Oracon. But the knowledge that there might be a relationship is not identical with knowledge of an actionable claim against the manufacturer for negligent testing or compounding or for failure to warn of known hazards. The doctors's advice in June, 1967 that she should stop using Oracon is equally equivocal. A person of ordinary diligence and intelligence receiving such advice might reasonably have concluded that although the manufacturer had adequately tested the drug and adequately warned against all known hazards, its continued use for her particular condition was nevertheless inadvisable. Finally, there is her consultation with an attorney. But even this evidence is equivocal, since both she and the attorney are dead and we do not know what he told her. At best there are inferences which can be drawn as to her state of knowledge. Admittedly they are strong inferences, but they are still inferences which can only be drawn by the finder of fact, in this case the jury. In summary, there is at least some doubt as to the facts on plaintiff's thrombophlebitis claim which makes the award of summary judgment on this claim inappropriate.[21]
 
 VI. Conclusion
 
 46
 There are on this record genuine issues of material fact with respect to the time when the decedent, Mrs. Goodman, and her husband discovered that they might have a claim against Mead Johnson for the thrombophlebitis, her cancer, his loss of consortium, and her death. The Order granting summary judgment is reversed. On remand the district court should permit the amendment of the complaint asserting the wrongful death action.
 
 
 47
 ROSENN, Circuit Judge (concurring and dissenting).
 
 
 48
 The majority has added another chapter to the ongoing saga of federal courts' efforts to reconcile the command of Erie Railroad Co. v. Tomkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), with the purposes of federal rules and policies. The majority concludes that Byrd v. Blue Ridge Electric Cooperative, Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), requires that the New Jersey practice of allocating to the court the decision as to when a cause of action is "discovered" for the purpose of applying the statute of limitations, must yield, in a federal diversity action, to the federal policy favoring jury decisions of disputed issues of fact. I dissent from that conclusion because I believe that the majority has misconstrued the New Jersey Supreme Court's decision in Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973). My difference on that point leads me to some disagreement with the majority on the disposition of the claims presented.
 
 I.
 
 49
 It is, of course, clear that Byrd does not require a federal court trying a diversity case to submit to the jury every issue that may be fairly characterized as factual, regardless of whether the governing state law would submit the issue to the judge. The Supreme Court's opinion in Byrd makes it clear that when the state practice of trying an issue to the judge is "bound up" with the rights and obligations of parties under state law, the federal court should follow the state practice. See 356 U.S. at 535, 536, 538, 78 S.Ct. at 899, 900, 901, 2 L.Ed.2d at 961, 962, 963.
 
 
 50
 To determine whether the South Carolina practice, reviewed in Byrd, of having the judge decide the statutory employer issue was an integral part of state substantive law, the Court examined the origins of the practice. The South Carolina case announcing the rule furnished "no reason for selecting the judge rather than the jury to decide" the issue. 356 U.S. at 536, 78 S.Ct. at 900, 2 L.Ed.2d at 961. The rule appeared to have evolved from the state's practice in judicial review of administrative decisions. Id. Accordingly, the Court found:
 
 
 51
 nothing to suggest that this rule was announced as an integral part of the special relationship created by the (Workmen's Compensation) statute. Thus the requirement appears to be merely a form and mode of enforcing the immunity . . . and not a rule intended to be bound up with the definition of the rights and obligations of the parties.
 
 
 52
 Id.
 
 
 53
 A year later, the Court followed a similar analysis in Magenau v. Aetna Freight Lines, Inc., 360 U.S. 273, 79 S.Ct. 1184, 3 L.Ed.2d 1224 (1959). At issue there was the Pennsylvania practice of having the trial judge decide whether a Workmen's Compensation Act plaintiff was the defendant's employee and whether the employment was "casual" and not "in the regular course" of defendant's business. Again finding "no reason" for the state practice, 360 U.S. at 278, 79 S.Ct. at 1187, 3 L.Ed.2d at 1228, the Court held that in a federal diversity case the issues would be submitted to the jury.
 
 
 54
 In contrast to the paucity of reasoning supporting the state practices considered in Byrd and Magenau, we are confronted in Lopez v. Swyer, supra, with a carefully considered decision to allocate to the judge rather than to the jury the decision whether a personal injury plaintiff has "discovered" his or her cause of action within the statutory period. The Lopez opinion, in reviewing the history of the discovery rule, 300 A.2d at 566-7, stated that the rule requires the accommodation of two conflicting policies. On one hand, the rule is intended to mitigate "the often harsh and unjust results which flow from a rigid and automatic adherence" to a strict statute of limitations. 300 A.2d at 566. On the other hand, it may be unjust "to compel a person to defend a law suit long after the alleged injury has occurred, when memories have faded, witnesses have died, and evidence has been lost." 300 A.2d at 567. Thus, "in each case the equitable claims of opposing parties must be identified, evaluated and weighed." Id.
 
 
 55
 It is not every belated discovery that will justify an application of the rule lifting the bar of the limitations statute. The interplay of the conflicting interests of the competing parties must be considered. The decision requires more than a simple factual determination; it should be made by a judge and by a judge conscious of the equitable nature of the issue before him.
 
 
 56
 Id.
 
 
 57
 In my view, this analysis is not, as the majority suggests, predicated "primarily (on) reasons of convenience and efficiency." Nor is it merely a "form and mode of enforcing," 356 U.S. at 536, 78 S.Ct. at 900, 2 L.Ed.2d at 962, the discovery rule. To be sure, the Lopez Court considered the practical aspects of its decision,[1] but it noted that "the matter does not rest there." 300 A.2d at 567. As the New Jersey Supreme Court envisioned the rule's operation, "a simple factual determination" of belated discovery of injury will not perfunctorily dictate application of the rule. Furthermore, the Court instructed its trial courts that:
 
 
 58
 All relevant facts and circumstances should be considered. The determinative factors may include but need not be limited to: the nature of the alleged injury, the availability of witnesses and written evidence, the length of time that has elapsed since the alleged wrongdoing, whether the delay has been to any extent deliberate or intentional, whether the delay may be said to have peculiarly or unusually prejudiced the defendant.
 
 
 59
 300 A.2d at 568.
 
 
 60
 Thus, the application of New Jersey's discovery rule requires a consideration and balancing of a complex of factors. The balancing envisioned by Lopez is a unitary process not readily divided into "factual" and "equitable" components. As I read Lopez, the allocation of this decision to the trial judge is "intended to be bound up with the . . . rights and obligations of the parties" under state law, Byrd, supra, 356 U.S. at 536, 78 S.Ct. at 900, 2 L.Ed.2d at 962, and the federal courts are thus obligated to follow the state practice.
 
 
 61
 The majority attempts to compromise the conflicting demands of Erie and the Seventh Amendment by bifurcating the factual and equitable components of the Lopez determination. There is nothing in Byrd which requires such a compromise where the state practice is an integral part of the substantive law. Also, the majority's approach may require a lengthy jury trial before the statute of limitations can be decided. This procedure is awkward and unnecessarily requires the expenditure of legal and judicial resources. More importantly, the majority approach might encourage forum shopping; a litigant whose case presents a "discovery rule" question may prefer to appeal to the sympathies of a jury and thus choose the federal forum over New Jersey's courts. Discouragement of such forum shopping was one of the policy bases underlying the Erie decision. See Witherow v. Firestone Tire & Rubber Company, 530 F.2d 160 at 163-164 (3rd Cir. 1976). Indeed, varying "statutes of limitation, perhaps more than any other kind of disparity, present opportunity for the kind of forum shopping Erie intended to preclude." Id. at 165. Not only does encouragement of resort to federal courts undermine Erie, but it increasingly burdens federal courts with diversity cases.
 
 
 62
 In short, I view New Jersey's allocation of the discovery rule determination to the trial judge as a matter of substantive New Jersey law which, under the mandate of Erie, federal courts are bound to follow.1a
 
 II.
 
 63
 Since I view the question of whether a personal injury plaintiff under New Jersey law knew or should have known of his or her cause of action within two years of filing his or her complaint as a question for the trial court, I review the factual findings of the district judge in this case under the "clearly erroneous" standard of Federal Rule of Civil Procedure 52(a). I rely on the majority opinion's account of the evidence in the record.
 
 
 64
 The evidence with respect to Mrs. Goodman's knowledge of her cause of action for thrombophlebitis includes statements of her doctor and her consultation with an attorney, both prior to June 11, 1968, and the admission. Suit was not instituted until February 25, 1971. On that record, I cannot say that the district court's conclusion that she knew or should have known of her claim more than two years before filing the complaint is clearly erroneous.
 
 
 65
 With respect to the cancer claim, I agree with the majority that the district court's legal analysis is insufficient. There is no evidence in the record to support the district court's assumption that the cancer claim and the thrombophlebitis claim represent but one cause of action. I think it is entirely possible that, on a record adequately indicating the complex biochemical and physiological processes involved with oral contraceptives, New Jersey law might recognize separate causes of action for Mrs. Goodman's thrombophlebitis and cancer illnesses. The district court should have conducted some inquiry into the medical aspects of this problem before assuming that there was but one cause of action which plaintiff sought to split.[2]
 
 
 66
 Finally, I agree with the majority that summary judgment on the per quod claim was inappropriate. Even though I would sustain the district court's decision that the thrombophlebitis claim is time barred, I agree that, insofar as Mr. Goodman's claim relates to Mrs. Goodman's thrombophlebitis, there is no evidence indicating his knowledge of his independent cause of action. Furthermore, if the cancer claim is independent of the thrombophlebitis claim, Mr. Goodman's per quod claim with respect to Mrs. Goodman's cancer is not time barred, because the complaint was filed within two years of the discovery of the cancer.
 
 III.
 
 67
 Accordingly, I would affirm the judgment of the district court with respect to the thrombophlebitis claim, and I would reverse and remand that court's judgment with respect to the cancer and per quod claims for further action consistent with this opinion.
 
 
 
 [1]
 The decision below is reported at 388 F.Supp. 1070 (D.N.J.1974)
 
 
 [2]
 Id. at 1073-75
 
 
 [3]
 The district court also suggested an alternate ground for refusing to consider plaintiff's wrongful death claim. Quoting from Matlack, Inc. v. Hupp Corp., 57 F.R.D. 151, 163 (E.D.Pa.1972), Judge Stern maintained that "a shift in theory should be denied, even in the absence of prejudice, where the party seeking to impose it has been guilty of flagrant abuse, bad faith, or truly inordinate and unexplained delay." 388 F.Supp. at 1072 n.2. This analysis, however, is not applicable to the factual setting of this case. First, the addition of a wrongful death claim is not a shift in the theory of recovery but rather a substitution of the decedent's beneficiary for the decedent as the party asserting the claim for pecuniary damages. See N.J.S.A. 2A:31-1. Second, there is no basis in the record of this case for finding that Robert Goodman has been "guilty of flagrant abuse" or "bad faith" or that the delay in asserting the wrongful death claim is "truly inordinate and unexplained."
 
 
 [4]
 N.J.S.A. 2A:31-5 provides:
 In every action brought under the provisions of this chapter the jury may give such damages as they shall deem fair and just with reference to the pecuniary injuries resulting from such death, together with the hospital, medical and funeral expenses incurred for the deceased, to the persons entitled to any intestate personal property of the decedent.
 
 
 [5]
 N.J.S.A. 2A:31-4 states:
 The amount recovered in proceedings under this chapter shall be for the exclusive benefit of the persons entitled to take any intestate personal property of the decedent, and in the proportions in which they are entitled to take the same. If any of the persons so entitled were dependent on the decedent at his death, they shall take the same as though they were sole persons so entitled, in such proportions, as shall be determined by the court without a jury, and as will result in a fair and equitable apportionment of the amount recovered, among them, taking into account in such determination, but not limited necessarily thereby, the age of the dependents, their physical and mental condition, the necessity or desirability of providing them with educational facilities, their financial condition and the availability to them of other means of support, present and future, and any other relevant factors which will contribute to a fair and equitable apportionment of the amount recovered.
 
 
 [6]
 See, e. g. Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); United States v. Houghman, 364 U.S. 310, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960); Howey v. United States, 481 F.2d 1187 (9th Cir. 1973); Middle Atlantic Utilities Co. v. S.M.W. Development Corp., 392 F.2d 380 (2d Cir. 1968)
 
 
 [7]
 E. g., Knabe v. Hudson Bus Transportation Co., 111 N.J.L. 333, 168 A. 418 (E. & A.1933); Redick v. Rohm & Haas Co., 97 N.J.Super. 58, 234 A.2d 252 (Law Div.1967); Kotkin v. Caprio, 65 N.J.Super. 453, 168 A.2d 69 (App.Div.), certif. denied, 34 N.J. 470, 169 A.2d 745 (1961); Biglioli v. Durotest Corp., 44 N.J.Super. 93, 129 A.2d 727 (App.Div.1957); aff'd 26 N.J. 33, 138 A.2d 529 (1958). But see Lawlor v. Cloverleaf Memorial Park, Inc., 56 N.J. 326, 266 A.2d 569 (1970), which suggests in dicta that the gloss heretofore placed by the courts on N.J.S.A 2A:31-1 and N.J.S.A. 2A:31-3 is not supported by the statutory language. Justice Jacobs questions whether the language of N.J.S.A. 2A:31-1, "such as would, if death had not ensued, have entitled the person injured to maintain an action for damages," refers only to the character of the injury and not to the time of suit or death. 56 N.J. at 344-45, 266 A.2d at 578-79
 
 
 [8]
 E. g., Oroz v. American President Lines, Ltd., 259 F.2d 636 (2d Cir. 1958), cert. denied, 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed.2d 572 (1959); Heavner v. Uniroyal, Inc., 118 N.J.Super. 116, 286 A.2d 718 (App.Div.1972), aff'd 63 N.J. 130, 305 A.2d 412 (1973); Tackling v. Chrysler Corp., 77 N.J.Super. 12, 185 A.2d 238 (Law Div.1962)
 
 
 [9]
 E. g., Rex v. Hutner, 26 N.J. 489, 140 A.2d 753 (1958)
 
 
 [10]
 After Lopez v. Swyer, the rule was extended to contractual time limitations, Jones v. Continental Cas. Co., 123 N.J.Super. 353, 303 A.2d 91 (Chan.Div.1973), and later to plaintiffs aware of the basis of their claim but unaware of the proper identity of a potential defendant, Aruta v. Keller, 134 N.J.Super. 522, 342 A.2d 231 (App.Div.1975); Lawrence R. McCoy Co., Inc. v. S.S. Theomitor III, 133 N.J.Super. 308, 336 A.2d 80 (Law Div.1975)
 
 
 [11]
 62 N.J. at 275 n.2, 300 A.2d at 567 n.2
 
 
 [12]
 62 N.J. at 274, 300 A.2d at 566-67
 
 
 [13]
 62 N.J. at 275, 300 A.2d at 567
 
 
 [14]
 62 N.J. at 274-75, 300 A.2d at 567
 
 
 [15]
 E. g., Tomalewski v. State Farm Life Insurance Co., 494 F.2d 882 (3d Cir. 1974); Mintz v. Mathers Fund, Inc., 463 F.2d 495, 498 (7th Cir. 1972)
 
 
 [16]
 E. g., United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1963) (per curiam); Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870 (3d Cir. 1972)
 
 
 [17]
 E. g., Fed.R. 56(c); O'Campo v. Hardisty, 262 F.2d 621 (9th Cir. 1968); Jackson v. Riley Stoker Corp., 57 F.R.D. 120 (E.D.Pa.1972)
 
 
 [18]
 See note 9 supra
 
 
 [19]
 E. g., Patusco v. Prince Macaroni, Inc., 50 N.J. 365, 235 A.2d 465 (1967); Kimpel v. Moon, 113 N.J.L. 220, 174 A. 209 (Sup.Ct.1934)
 
 
 [20]
 E. g., Tortorello v. Reinfeld, 6 N.J. 58, 77 A.2d 240 (1950); Smith v. Red Top Taxicab Co., 111 N.J.L. 439, 168 A. 796 (E. & A.1933); Rankin v. Sowinski, 119 N.J.Super. 393, 291 A.2d 849 (App.Div.1972)
 
 
 [21]
 E. g., Tomalewski v. State Farm Insurance Co., supra at 884
 
 
 [1]
 It noted that "submission of the issue to a jury is in every sense awkward." 300 A.2d at 567
 1a In Thomas v. E. J. Korvette, Inc., 476 F.2d 471 (3d Cir. 1973), I concluded that in a malicious prosecution suit based on Pennsylvania law, the issue of probable cause should be decided as a legal question by the trial judge "based upon special findings of the jury as to any disputed questions of fact." Id. at 480. I felt that we were free to fashion our own rule in that case because Pennsylvania law treated the allocation as a procedural matter not bound up with the fundamental rights of the parties. Id. As I read Lopez, we have a different situation here. Furthermore, bifurcating the probable cause issue in Thomas was not procedurally cumbersome because probable cause was an ultimate issue in the case, rather than a preliminary question as is the discovery exception.
 
 
 [2]
 Of course, if the district court determines that the cancer claim is a separate cause of action, there is no statute of limitations problem, because the complaint was filed within two years of Mrs. Goodman's learning that she had cancer. If the district court correctly determines that Mrs. Goodman had but one cause of action, I would sustain its conclusion that the action is time barred for the reasons expressed on the thrombophlebitis claim