Stephen ANTHONY, Appellant,

v.

RYDER TRUCK LINES, INC., a corporation, and Byrns Motor Express, a division of Ryder Truck Lines, Inc., and Lawrence E. Smith, Helen E. Smith, Joanne H. Wise, Robert F. Dermady, and Alex Miller, Trustees, W. T. Byrns Motor Express, Inc., Pension Trust Fund, Appellees.

No. 79–1539.

United States Court of Appeals, Third Circuit.

Argued Nov. 14, 1979.

Decided Dec. 27, 1979.

Dona S. Kahn (argued), Harris & Kahn, Philadelphia, Pa., for appellant.

John Paul Jones (argued), Peter Reed Corbin, Jones, Corbin & Dickinson, Jackson-

ville, Fla., Jan E. DuBois, White & Williams, Philadelphia, Pa., for appellees Ryder Truck Lines, Inc., and Byrns Motor Express.

C. Oliver Burt, III (argued), Monteverde & Hemphill, Philadelphia, Pa., for appellees Lawrence E. Smith, Helen E. Smith, Robert F. Dermady and Alex Miller, Trustees of the W. T. Byrns Motor Express Inc., Pension Trust Fund.

Before HUNTER, WEIS and GARTH, Circuit Judges.

### OPINION OF THE COURT

GARTH, Circuit Judge.

In this diversity case, the plaintiff Anthony appeals from a grant of summary judgment in favor of the defendants, Ryder Truck Lines, Inc. (Ryder), Byrns Motor Express Division (Byrns), and the Trustees of the Byrns pension fund (the Trustees). At issue is the liability of the several defendants to Anthony in connection with his rights under the Ryder pension plan and the pension plans of Byrns, Ryder's predecessor. Because we are satisfied that there exists a genuine dispute as to material facts, we conclude that summary judgment should not have been granted. We therefore reverse and remand the case to the district court for a plenary trial.

### I.

Anthony was born in 1926, and was hired in 1952 by W. T. Byrns & Company as a salesman. This company was acquired by Ryder and became Ryder's Byrns Motor Express Division in 1970. Anthony continued to work for the Byrns Division of Ryder until June 1975, when he was fired by Ryder for "lack of progress."

In 1959, Byrns instituted its first pension plan (the 1959 plan) for its employees, including Anthony. The 1959 plan did not qualify under the Internal Revenue Code, and Byrns therefore substituted a different

plan in 1962 (the 1962 plan), which did qualify under the tax code. Subsequently, in 1963, all employees covered under the 1959 plan, including Anthony, received the following letter from Lawrence Smith, a trustee of both the 1959 and the 1962 plans:

It has become necessary in order *to continue the Company's retirement program* to discontinue the pension trust established in December 1959, and replace it with a new trust effective September 30, 1962. Since the contributions to the old trust were held not to be tax deductible to the Company, to the extent possible the assets not represented by insurance contracts must be recovered.

In order to accomplish this purpose we have prepared and enclose herewith an instrument, the effect of which is to release to the Company all the assets of the old trust (other than life insurance contracts which will be transferred to the new trust).

*The new plan will provide the same benefits as the old* and your monthly pension at retirement will not be affected by the action now being taken. Future contributions by the Company will be in an increased amount to fund the benefits over the shorter period of time.

Please execute the enclosure before a notary public and return it to the Company as soon as possible. If you have any questions concerning your pension rights feel free to ask them.

This is the W. T. BYRNS MOTOR EXPRESS PENSION TRUST FUND.

App. at A–218 (emphasis supplied).[1] Anthony complied with the request made in the letter and executed the enclosed release form. *Id.* at A–219.

In 1970, Byrns was acquired by Ryder. In September of that year, Anthony, as a former Byrns employee, was sent the following letter describing his eligibility for the Ryder pension plan:

Dear Fellow Employee:

---

[1] The letter was apparently not dated. Nevertheless, it is admitted by both parties that it was written in 1963. Anthony's handwritten notation across the top reads "3/1/63," and he testified in his deposition that he therefore must have received it on March 1, 1963, Anthony Deposition at 13, App. at A–127.

Subject: *Information on Retirement Benefits*

Most of us plan and look forward to a time of retirement. How far ahead and to what extent we must plan depends greatly upon our individual circumstances, health, age, family and income needs. I am pleased to tell you that effective January 1, 1970 the W. T. Byrns Motor Express, Inc. Pension Trust has been amended into the Ryder Truck Lines Retirement Plan for Salaried Employees and hereafter you will be provided with the vastly improved benefits under the Ryder plan.

The attached booklet summarizes the details of the Ryder plan and I suggest that you read it carefully. Please note however that your participation under the Ryder plan commences on January 1, 1970 and *your annual benefit and credited service earned through December 31, 1969 is based upon your participation under the Byrns plan, if any.* If your employment terminates for any reason you will receive no less than you would have received under the terms of the Byrns plan if your employment had terminated on January 1, 1970.

\* \* \* \* \* \*

Please verify the following personal information and let us know by no later than October 30, 1970, if you should find any discrepancy or have any questions. If we do not hear from you, this information will be considered correct and will be the basis for calculating your future retirement benefits.

We will be happy to assist you in any way possible with your retirement planning.

*Id.* at A–258 (emphasis supplied). At the foot of the letter was a chart which listed Anthony's birthdate incorrectly as 1927 and stated that Anthony's credited service as of December 31, 1969, was dated from 1952.[2] A summary booklet describing the plan was attached to the letter.

In 1974, Anthony received a work sheet from Ryder along with a transmittal letter. The work sheet advised Anthony, among other things, that October 1, 1962 was the date from which his credited service was calculated.[3] The work sheet, which had been filled out in hand by Ryder, also computed his credited service prior to January 1, 1970 as seven years and three months. *Id.* at A–303, A–304. It is undisputed that Anthony never corrected the error as to his birthdate in the 1970 letter, nor did he question the discrepancy between the 1970 and 1974 letters respecting the commencement date for his credited service, the 1970 letter from having represented his starting date as 1952 and the 1974 letter as 1962.

When Anthony was fired by Ryder in 1975, he was denied pension benefits under the Ryder plan. Section 4.1 of the Ryder plan provides:

Termination of Employment. If an Employee's employment terminates other than by death or retirement after he has attained his forty-fifth (45th) birthday and has completed at least fifteen (15) years of Credited Service, he shall be entitled to receive a benefit commencing at his Normal Retirement Date determined in accordance with Section 3.1 or 3.3 whichever is applicable but based on his Average Final Salary and Credited Service prior to the date his employment terminates.

*Id.* at A–274. Ryder's position, expressed to Anthony in a letter dated October 16, 1975, *id.* at A–299, was that since Anthony's credited service had begun in 1962, he had fewer than fifteen years of credited service and was therefore ineligible to receive benefits. Accordingly, Ryder paid Anthony a lump sum of $6,510.82, representing Anthony's equity in the 1962 plan for the years 1962 to 1970.

Anthony commenced suit on November 1, 1976 under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634, and also under diversity jurisdiction, 28 *id.*

---

**2.** The chart also gave figures for Anthony's annual pension benefit, cash value of the pension, and annual premium.

**3.** The effective date of the 1962 plan was September 30, 1962. App. at A218.

§ 1332. The age discrimination claim against Ryder and Byrns was dismissed with prejudice by stipulation on February 14, 1978. His claim for breach of fiduciary duty alleged that the Trustees of the 1962 plan had wrongfully induced Anthony to release his rights under the 1959 plan, by leading him to believe that his rights under the 1959 plan would be preserved by the 1962 plan. Anthony also claimed that he was entitled to benefits under the provisions of one or more of the various pension plans.

All parties moved for summary judgment. On February 28, 1979, the district court granted the motions of Ryder, Byrns, and the Trustees, and denied Anthony's motion. *Anthony v. Ryder Truck Lines, Inc.,* 466 F.Supp. 1287 (E.D.Pa.1979). The district court determined that the Ryder pension plan carried over credited service only from the Byrns 1962 plan—the plan which was in effect at the time Ryder took over Byrns. In addition, the court determined that the 1962 plan itself had not carried over credited service from the 1959 plan. The court also concluded that Anthony could not succeed on an estoppel theory, holding that there were neither material misrepresentations by Ryder, Byrns, or the Trustees, nor reasonable detrimental reliance on Anthony's part. Anthony's appeal followed.

## II.

The scope of our review of an order granting summary judgment has been explained concisely in *Goodman v. Mead Johnson & Co.,* 534 F.2d 566 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977):

> Rule 56 allows the trial court to grant summary judgment if it determines from its examination of the allegations in the pleadings and any other evidential source available that no genuine issue as to a material fact remains for trial, and that

the moving party is entitled to judgment as a matter of law. The purpose of the rule is to eliminate a trial in cases where it is unnecessary and would only cause delay and expense. On review the appellate court is required to apply the same test the district court should have utilized initially. Inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion. The non-movant's allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt.

534 F.2d at 573 (footnotes omitted).

### A.

Absent proof of an estoppel, *see* Part II–B *infra,* we would agree with the district court that as a matter of contract, under the Ryder pension plan as it is written, Anthony could not claim credited service from any time earlier than 1962. Section 11.5 of the plan governs computation of credited service to be carried over from a prior plan:

> Employment with an Affiliated Company shall be recognized as Credited Service for purposes of this Plan, limited, however, to the period or periods for which the Employee received credit under any pension or retirement plan of such Affiliated Company *in force at the time it became an Affiliated Company.*

App. at A–285 (emphasis supplied). The only Byrns plan in force at the time Byrns became an "Affiliated Company,"[4] *i. e.* in 1970, was the 1962 plan. The 1962 plan, which replaced the 1959 plan, made no provisions for tacking years of credited service earned under the earlier plan.[5] Other than by their conduct, as discussed in Part II–B *infra,* the contract terms of the 1962 plan were never formally modified by either Byrns or Ryder.

---

**4.** Defined in Section 1.20 of the Ryder plan, App. at A–269.

**5.** Article IX of the 1962 plan provided for a vested interest after five years' participation in "the Trust," without making reference to the prior plan. *See id.* at A–236.

Anthony's reliance on the summaries of the Ryder plan provided in 1970 and in 1974 (when the plan was amended), is misplaced. A disclaimer appeared in both summaries stating that the formal text of the complete plan which was to be found in the Personnel Office in Jacksonville, Florida, was the controlling document. *Id.* at A–260, A–292. This distinguishes the present case from both *Gould v. Continental Coffee Co.*, 304 F.Supp. 1 (S.D.N.Y.1969), and *Dictaphone Corp. v. Clemons,* 488 P.2d 226 (Colo.App. 1971), where failure to comply with Rev. Rul. 61–157, 1961–2 C.B. 67, 74,[6] allowed the employee to rely on a summary or letter whose terms conflicted with those of the formal text. *See* Annot., 50 A.L.R.3d 1270, 1274–76 (1973 & Supp.1979), and cases cited therein. Moreover, both Ryder summaries referred to credited service and defined that term to exclude "service with a subsidiary prior to adoption of this plan," adding only that "[t]here may be exceptions and you will be informed if you are affected." App. at A–262, A–294–95. The summaries thus accurately paralleled the formal text of the complete plan and fail to support Anthony's claim that credited service under the Ryder plan included all service years under every prior Byrns plan.

**B.**

Nevertheless, we find that Anthony has put into issue facts that can support a claim both against his employers (Ryder and Byrns) and against the Trustees on the basis of estoppel. The misrepresentations asserted by Anthony to sustain his claim are contained in the 1963 Trustees' letter and the 1970 Ryder letter. Anthony's allegations as to reliance appear in his affidavit. There he claims that he turned down other offers of employment based in part on his expectation that he was to receive a

pension under the 1962 plan and later under the Ryder plan.

The 1963 letter from the Trustees, which informed Anthony that the original 1959 plan was to be replaced by the 1962 plan and which sought Anthony's approval, stated: "The new plan [1962] will provide the same benefits as the old [1959] . . .." *Id.* at A–218. Anthony testified in his deposition that he understood the word "benefits" to include the three years of credited service from 1959 to 1962. Anthony Deposition at 52, App. at A–166. The Trustees' letter also explained the need to change the company's pension plan solely because of tax considerations. In his affidavit, Anthony stated that Trustee Lawrence Smith, to whom he spoke, "told me absolutely nothing about my waiving my years of credit from the plan from 1959–1962" and gave "an assurance on his part that we were merely transferring the funds from one fund to another because of some IRS requirements," App. at A–24.[7] Anthony further stated that he and the other employees naturally believed that their credited service earned under the 1959 plan would be carried over to the 1962 plan. *Id.*[8]

Anthony's affidavit also relates details of a discussion he had in 1963 with Smith:

Mr. Smith persuaded me to stay, he stated that the benefits with the company were very good and they would also improve in the future and that because of the pension I should not consider leaving.

*Id.* at A–24. The affidavit goes on to state that the level of monthly payments he expected to receive under the pension plan "was one of the main benefits that I relied upon when I declined other job offers," *id.* at A–25, and that even after Ryder acquired Byrns he "depended on [the pension] and did not leave the company in reliance thereon," *id.* at A–27.

**6.** "In all cases of substitutes for furnishing employees with copies of the plan, the medium used must apprise the employees that a copy of the complete plan may be inspected at a designated place on the company's premises during stated times."

**7.** This is fortified by the fact that the conditions for the vesting of employee benefits under the

two plans were substantially the same. *Compare* 1959 plan, App. at A–209–11, *with* 1962 plan, *id.* at A–235–39.

**8.** An affidavit from another employee, Edmond Martel, to the same effect, was also filed. *Id.* at A–29.

Under these circumstances, it cannot be said that Anthony's reliance on his belief as to the number of years of credited service he had accumulated and his expectation of receiving benefits under the pension plans was unreasonable or unjustified as a matter of law, particularly when we give effect to the principle that all inferences should be afforded to the party against whom a motion for summary judgment is made, *Goodman*, 534 F.2d at 533; *Braden v. University of Pittsburgh*, 552 F.2d 948, 966–67 (3d Cir. 1977) (Garth, J., concurring). The Trustees' 1963 letter, coupled with statements which Anthony attributed to Smith about the effect of, and reason for, the changeover, and about Anthony's remaining with Byrns because of the pension benefits, may very well have reasonably induced Anthony not to change employment.

Anthony's case against Ryder and Byrns is factually plausible as well. The 1970 letter contained two errors. First it showed Anthony's date of birth as 1927 instead of 1926. Second, it listed Anthony's credited service as having started in 1952 rather than 1962. Ryder claims that any reliance on the 1952 figure was unreasonable in light of the error which it made in showing Anthony's birthdate; the cautionary instruction in the letter that it was the *employee* who was responsible for correcting errors; Anthony's admission that he knew that *no* pension plan had existed before *1959*, Anthony Deposition at 7, App. at A–121; and the fact that the work sheet issued in 1974 set forth the correct date (1962) for the commencement of credited service.

We cannot agree with Ryder. First, Anthony's failure to correct his birthdate is by itself irrelevant, and whether or not that one error should have alerted him that there were other errors is a question of fact to be resolved at a plenary trial and not by summary proceedings. Nor does the cau-

tionary instruction which placed the burden on Anthony to correct errors help Ryder. Since that instruction stated that uncorrected information would be taken to be true, it could be found that Ryder and not Anthony is bound by the "1952" representation of credited service. Moreover, despite Anthony's knowledge that no plan existed as far back as 1952, Anthony's affidavit asserts that in 1971 the general manager of Byrns had told him "that Ryder recognized all employees back to their starting dates," App. at A–26. Anthony also testified on deposition that he had been informed at the same time by Byrns' general manager that all past service was recognized "from time of employment," which in Anthony's case went back to 1952, Anthony Deposition at 6–7, 10, App. at A–120–21, A–124. In view of Anthony's testimony on deposition and his affidavit, it appears that even though he may have been factually incorrect, he had been given a reasonable basis by Byrns for believing that he had credited service back to 1952, the year when he was first employed by that company. This, too, is a matter for factfinding at trial, rather than for disposition on a summary judgment motion.

Lastly, even if the discrepancy in dates of credited service was "corrected" in 1974, Anthony's reliance on the earlier communications and representations up until that time would not be negated and would still support a claim of estoppel. In view of the format of the 1974 work sheet, it may be questioned as to whether even that document sufficed to inform Anthony clearly and finally that he had credited service only from October 1, 1962.[9]

Anthony has thus set forth all the necessary elements comprising a promissory estoppel cause of action against Ryder, Byrns, and the Trustees of the Byrns pension fund—representations that reasonably could have been expected to induce reliance

---

**9.** The Ryder work sheet, which was sent to Anthony together with a cover letter of April 4, 1974, required some measure of study and analysis by the pensioner. The work sheet itself was divided into four sections and contained twenty-two line items with examples and a column which was tailored to Anthony's particular case and completed by the insertion of handwritten figures. Our examination of the work sheet leaves us with an impression that it did not present the relevant information in the clearest possible manner.

on his part, as well as actual reliance. Whether, and the extent to which, these elements were actually present are questions of fact which do not lend themselves to summary disposition but will have to be resolved at a trial on the merits.

### III.

Because there is a genuine issue as to material facts, the grant of summary judgment in favor of Ryder, Byrns, and the Trustees was improper. We will therefore reverse so much of the February 28, 1979 order which granted the defendants' motion for summary judgment and remand for a plenary trial.[10]

---

**10.** Anthony's counsel stated at oral argument before us that Anthony seeks to recover from the Trustees only if he cannot recover from Ryder under the pension plan or under an estoppel theory. Because Ryder's liability has yet to be determined at trial, it would be premature and inappropriate to affirm a dismissal of Anthony's claim against the Trustees.