**In the Matter of The ELI WITT COMPANY, Debtor.**

**Willie T. NEWMAN, Plaintiff,**

v.

**The ELI WITT COMPANY, Defendant.**

**Bankruptcy No. 79–896.**

United States Bankruptcy Court, M. D. Florida, Tampa Division.

May 14, 1982.

David S. Haynes, Caldwell, Johnson, Winston & Massengill, Bristol, Tenn., for plaintiff.

John K. Olson, Tampa, Fla., for defendant.

## MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

This is a pre-Code arrangement proceeding and the matter in controversy is the relief prayed for by a pleading entitled "Petition" treated as a complaint, filed by Willie T. Newman against the Debtor, Eli Witt Company (Eli Witt).

It is the contention of the Plaintiff, as set forth in his petition, that Eli Witt breached a contract under which Eli Witt was required, under its pension plan, to provide disability benefits to Newman. In due course, Eli Witt filed its answer and the Motion for Summary Judgment, which is the matter presently under consideration. It is conceded by the Plaintiff that there are no genuine issues of material fact and that this Court shall determine the respective rights of the parties by considering the pleading and the affidavits. The record reveals the following undisputed facts:

The Plaintiff was first employed by Eli Witt in the 1940's. [Pollock, ¶ 3, Newman, ¶ 1]. He continued his employment with the company until 1974. [Id.] At the time he left the company, the Plaintiff was 47 years and three months of age. [Pollock, ¶ 3].

Effective January 1, 1969, Eli Witt's predecessor adopted the Retirement Plan for Employees of The Eli Witt Company (the Plan). The Plan has been amended since then in accordance with federal law, including the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq. [Pollock, ¶ 4]. A copy of the Plan is attached to the Pollock affidavit as Exhibit A.

At the time the Plaintiff left Eli Witt's employ, he had 25 years of credited service under the Plan. Because the Plaintiff was the not yet 65, he was not then eligible to begin receiving retirement benefits. Due to his 25 years of service, however, Plaintiff has a vested interest in the Plan and will begin receiving retirement benefits upon reaching his 65th birthday (normal retirement benefits) or his 55th birthday (early retirement benefits; if he chooses to receive early benefits). [Pollock, ¶ 5].

Just prior to leaving Eli Witt's employ in 1974, the Plaintiff suffered a heart attack. [Newman, Exhibit B]. He recovered from this condition. As the Social Security Administration later found, "[s]ubsequent electrocardiograms and Master's test were substantially normal and there was no evidence of significant limitation or recurrent problems until August 29, 1976." [Id.] Before he left the company, the Plaintiff had not applied for disability benefits under the Plan, was not receiving disability payments under Social Security, and even had made no claims for medical insurance benefits under the company's separate medical insurance plan. [Pollock, ¶¶ 6–7].

By early 1979, the Plaintiff had not worked for Eli Witt for almost five years. He then contacted the company for the first time concerning the payment to him of

disability benefits. [Pollock, ¶ 8]. Although the Plan provides disability benefits in certain circumstances, Eli Witt determined that the Plaintiff was ineligible for such benefits under the Plan. [Id.]

Thereafter, on September 20, 1979, the Social Security Administration, Appeals Council, determined that petitioner was and had been disabled since August 29, 1976—some two years after Plaintiff left Eli Witt. The Plaintiff advised Eli Witt of this Social Security decision and again claimed disability benefits under the Plan. [Newman, ¶ 2]. Again, Eli Witt determined that the Plaintiff was ineligible for such benefits under the Plan and that the determination by the Social Security Administration of disability beginning August 29, 1976 was legally insignificant.

Considering the foregoing, this Court is satisfied that Newman was a "terminated member" under the Plan and because disability benefits under the Plan were available only to "active members", Newman is not entitled to the relief he seeks.

This conclusion is based on the following:

Section 1.02 of the Plan, page 3–A, sets forth the classes of members under it. According to § 1.02(a), "active members" are those who are "in service" and who have not reached [their] Normal Retirement Date." "Service" is defined in § 1.02(a), page 3, and in § 1.01(A)(a), page 3–2, as "employment as an employee" with Eli Witt. "Normal Retirement Date" is defined in § 2.01, page 5, as the first day of the month following a member's 65th birthday. Thus, "active members" under the plan are those current, working employees of the company who are under 65. Because the Plaintiff has not worked for the company in more than six years and because he is now only 53 years of age, the Plaintiff is clearly not an "active member" under the Plan.

Instead, the Plaintiff is a "terminated member" under the Plan. § 1.02(b) defines a "terminated member" as a former active member who is not in service, who is entitled to non-forfeitable benefits under the Plan, and who has not reached his normal [or early] retirement dates. Thus, a "terminated member" is fully vested because of his qualifying service with the company and, therefore, will be receiving his retirement benefits upon reaching his 65th birthday.

In addition to retirement benefits, disability benefits are provided in certain circumstances under the Plan. These disability benefits, however, are available only to active members. § 3.11, page 8–B, clearly establishes in its opening line that "[a]n active member is eligible for a monthly disability payment if ..." (emphasis supplied). Nothing in this section makes disability payments available to terminated members, such as the Plaintiff. In every instance in which the more general term "member" is used in § 3.11, the context clearly establishes that it is referring only to a member eligible for disability payments, which, in turn, is clearly only an active member.

Confronted with the fact that the Plan cannot help him, the Plaintiff attempts to create benefits by arguing that a description of the Plan provided him in a "handout" brochure, attached to his affidavit as Exhibit D, does not make the distinction between active and terminated members as the Plan itself does. Thus, he argues, the summary description of the Plan controls and he should be paid.

It is true that page 6 of the summary description booklet, Exhibit D to the Newman affidavit, does not go into complete detail concerning the Plan benefits outlined in the Plan itself. The booklet does not describe the fact that disability benefits are available only to active members under the Plan. On the other hand, from the very introductory page of the booklet, it is clear that the booklet is addressed to the company's "employees," not to the company's former employees. Only the employees, of course, are active members under the Plan. Thus, there would be no reason to make this distinction.

Moreover, the booklet clearly spells out, on page 8, § 12, that the group annuity

contract, underwriting the Plan and the Plan itself, govern all "your rights and benefits under the Plan outlined in this booklet." Thus, there is no question that the booklet cannot control. The cases are legion that an outline describing a pension plan may not be effective to override the terms of the plan where the outline expressly states that it is only a brief description of the plan and that the terms of the benefits are governed entirely by the master contract. Cases cited at *Annot.*, 50 A.L. R.3d 1270, 1274 § 4(a) (1973). As was written in *Anthony v. Ryder Truck Lines, Inc.*, 611 F.2d 944, 948 (3d Cir. 1979):

> Anthony's reliance on the summaries of the Ryder plan provided in 1970 and in 1974 (when the plan was amended), is misplaced. A disclaimer appeared in both summaries stating that the formal text of the complete plan which was to be found in the personnel office in Jacksonville, Florida, was the controlling document.

Cases decided under the Employee Retirement Income Security Act of 1974 (ERISA), reach the same result. Under § 102 of that Act, 29 U.S.C. § 1022, a "summary plan description" is required to be furnished to participants and beneficiaries. Even though ERISA requires a summary plan description to be sufficiently accurate and comprehensive to apprise participants and beneficiaries of their rights "under the plan," the courts have held that a participant or beneficiary cannot use a summary plan description to sue for his benefits under the Act. *O'Brien v. Sperry Univac and Sperry Rand Corp.*, 458 F.Supp. 1179 (D.D. C.1978). The Court reasoned simply that a participant's or beneficiary's cause of action arises under the Plan and not under the summary plan description. The same is true here.

In short, the booklet attached to the Newman affidavit as Exhibit D is nothing more than a summary description of the Plan. On its face it refers to the Plan and describes the Plan as the controlling document. The booklet was not even addressed to the Plaintiff. In the circumstances, he cannot be heard to claim that he is entitled to benefits because of that booklet when the Plan does not provide for them.

A separate final judgment will be entered in accordance with the foregoing.