**AMERICAN FEDERATION OF TEACHERS, LOCAL 1825 and LOCAL 1826, Plaintiffs**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS; ROY L. SCHNEIDER, M.D., GOVERNOR OF THE VIRGIN ISLANDS; JAMES CHEEK, Ph.D, COMMISSIONER OF EDUCATION; and ORAN C. ROEBUCK, CHIEF NEGOTIATOR, Defendants**

Civ. No. 761/1995

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

February 1, 1996

VINCENT FRAZIER, ESQ., and PEDRO WILLIAMS, ESQ., (Law Offices of Frazier & Williams), St.Thomas, U.S.V.I., *for Plaintiffs*

PAUL GIMINEZ, ESQ., and RICHARD DAVIS, ESQ., (Department of Justice), St. Thomas, U.S.V.I., *for Defendants*

HODGE, *Presiding Judge*

## SUMMARY JUDGMENT

This matter came on for a hearing on November 21, 1995 on Plaintiffs' Motion for Temporary Restraining Order and on December 12, 1995 on Defendants' Motion to Dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted, or in the alternative for Summary Judgment. Attorneys Vincent Frazer, Esquire and Pedro Williams, Esquire appeared on behalf of Plaintiffs. Assistant Attorneys General Paul Gimenez and Richard Davis appeared on behalf of Defendants.

At the December 12, 1995 hearing, Mr. Glen Smith, President of AFT-Local 1825, testified for Plaintiffs, and Mrs. Carol Henneman, Assistant Commissioner of the Department of Education, testified for Defendants

### I. Facts

On September 15, 1995, Hurricane Marilyn struck the Virgin Islands causing widespread damage, including the destruction of the public schools on both St. Thomas-St. John and St. Croix. All St. Croix public schools were closed until October 11, 1995 when most reopened. On St. Thomas, all public schools were closed until October 23, 1995 when some reopened. Subsequently, the remaining public schools reopened, some on double sessions, as they became ready for the students. Some students lost in excess of forty school days as a result of the Hurricane.

Shortly after the Hurricane, and while the schools were closed, the Governor ordered teachers, paraprofessionals and support staff to report to work. The teachers were assigned to approximately sixteen hours per week of relief work at Emergency Distribution Centers and to perform other emergency relief duties. The teachers worked in their reassigned roles until their respective schools reopened. Although all teachers did not report for relief work, they were all paid in full while the schools were closed.

After the schools reopened, the Commissioner of Education issued a revised school calendar to make up the lost school days. Plaintiffs objected to the calendar, claiming that they were not consulted prior to its issuance. They then filed this action seeking injunctive and declaratory relief.

## II. Parties Contentions

Plaintiffs argued that on November 10, 1995, Defendant James E. Cheek, Commissioner of the Department of Education, issued a revised school calendar without consulting them, as required by their Collective Bargaining Agreement (hereinafter "CBA"). They argued that the issuance of the revised school calendar without the required consultation is a breach of the CBA, specifically Article IX (1),(3) and (5).

To support their contentions, Plaintiffs submitted a copy of a letter, dated October 25, 1995 addressed to Governor Roy L. Schneider, requesting that he or Education Department officials meet with them to discuss the revised school calendar. They contended that Dr. Cheek responded that he was willing to meet with them (Letter dated October 30, 1995); that they wrote to Dr. Cheek providing three alternative dates for a meeting to "negotiate" the revised school calendar (Letter dated October 31, 1995); and that no meeting was scheduled.[1]

In support of their Motion to Dismiss Plaintiffs' Complaint, Defendants argued that they complied with their obligation under the CBA to consult with Plaintiffs before issuing the revised school calendar. Mrs. Henneman testified that at the conclusion of a meeting with Plaintiffs on October 16, 1995 which dealt with other issues, she asked Mr. Smith when they were going to meet to discuss the revised school calendar, that Mr. Smith stated that the teachers were not making up any lost school days, and that it was not open for discussion, and that therefore the initial revised schedule was issued without consultation.

In addition, Defendants argued that on November 8, 1995, prior to the filing of this case on November 13, 1995, they met on St.

---

[1] Plaintiffs also asked the Court to declare that Section 1125 of Title 23 is an unconstitutional delegation of power to the Governor to suspend laws during emergencies. They argued that Section 11 of the Revised Organic Act delineates the emergency powers of the Governor; that the power to suspend laws is not one of them; and that the Legislature cannot grant the Governor any powers beyond those conferred by the Revised Organic Act. However, a court need not decide a constitutional question, although properly presented, if there is some other ground upon which the case may be resolved. *Christopher v. Tuitt,* 20 V.I. 88 (Tern Ct. 1983), citing *Alexander v. Tennessee Valley Auth.,* 297 U.S. 288 (1936). Since this case will be disposed of on other grounds, the constitutional question will not be addressed at this time.

Croix with Mr. Cecil Benjamin, president of AFT-Local 1826, to get his input into the revised school calendar, and that Mr. Benjamin submitted suggestions which were adopted into the initial revised calendar issued on November 10, 1995. (Affidavit of Anita G. Plaskett, Insular Superintendent of Schools for the District of St. Croix, dated November 20, 1995). Finally, Defendants argued that on November 24, 1995, after the November 21, 1995 hearing, they met with Mr. Smith, on behalf of AFT-Local 1825, to discuss the revised school calendar; that the meeting lasted over three hours; and that the parties engaged in free and open discussion; and that as a result of this meeting, the Commissioner of Education issued his final revised calendar. (Affidavit of Oran C. Roebuck, Chief Labor Negotiator, dated December 7, 1995).

## III. Discussion

Rule 12(b) of the Federal Rules of Civil Procedure provides in relevant part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Since matters outside the pleadings were admitted by the court, Defendants' Motion to Dismiss will be treated as one for Summary Judgment.

Under Rule 56(c) of the Federal Rules of Civil Procedure, Summary Judgment may be entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977). After the moving party has met its burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Only after it has been shown that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law can the court grant summary judgment in the moving party's favor. Fed. R. Civ. P. 56(c).

■ Title 17 V.I.C. § 61 specifically provides that the Department of Education shall set the school calendar. The CBA, which governs the relationship between the parties and their obligations and duties to each other, also provides that the school calendar shall be constructed by the Commissioner of Education in consultation with the Union.

Article IX of the CBA provides in relevant part:

(1) The school year shall consist of 180 teaching days, unless reduced by the Commissioner at his discretion. Days lost due to weather, flood, fire or earthquake shall be made up during the school year. (emphasis added) Days required to be made up at the end of the year shall be limited to a maximum of five (5) days.

\* \* \*

(3) The school calendar shall be constructed by the Commissioner of Education in consultation with the Union (emphasis added), subject to the approval of the Board of Education and the Governor, and shall be distributed not later than the first Monday in May.

\* \* \*

(5) In the event that any adjustment is made to the length of the school year (not including section 1 of this Article) or if a 12 month plan becomes effective during the life of this contract, all provisions affected thereby shall be renegotiated.

27

The CBA provides that the school year shall consist of 180 teaching days. It further provides that days lost due to weather shall be made up during the school year, and that the school calendar shall be constructed by the Commissioner of Education in consultation with the Union. Since the CBA only provides for consultation, no agreement by the union is necessary for the issuance of a revised calendar.

The American Heritage Dictionary, Third Edition, defines consultation as a "conference at which advice is given or views are exchanged." Thus, Defendants would have complied with the CBA if they provided Plaintiffs with an opportunity to give their input and share their views on the construction of the revised school calendar.

The record shows that consultation occurred with Plaintiff AFT-Local 1826 on November 8, 1995 when Mr. Benjamin, on behalf of AFT-Local 1826, met with Defendants. On November 24, 1995, Defendants met with Mr. Smith, on behalf of AFT-Local 1825, after the initial hearing on November 21, 1995 and while the Court took the motion under advisement. However, there was no consultation at the meeting on October 16, 1995 when Mrs. Henneman asked Mr. Smith when he intended to meet to discuss the revised school calendar. Although Mr. Smith refused to set a meeting date and indicated that no meeting would take place, Plaintiffs' attorney wrote to the Governor on October 25, 1995 and to the Education Commissioner on October 30, 1995 demanding consultation on the revised calendar, and suggesting alternative meeting dates. These requests for consultation were all made before the initial revised calendar was issued on November 10, 1995, and prior to the filing of Plaintiffs' complaint on November 13, 1995.

The Court is therefore satisfied that Mrs. Henneman's inquiry as to when the parties would meet contemplated a future meeting with the union before the revision of the school calendar. The Court also is satisfied that Mr. Smith's reaction to Mrs. Henneman's initial inquiry did not constitute a waiver of Plaintiffs' right to consultation, especially since it was a mere off-hand remark made at the of a meeting dealing with other matters. Indeed, the subsequent letters from Plaintiffs' attorneys put Defendants on notice that consultation was being demanded. Moreover,

28

since both letters were received by Defendants prior to the publication of the first revised calendar on November 10, 1995, the Court can only conclude that the demand for consultation was ignored, and that Defendants intentionally issued the revised calendar without consulting AFT-Local 1825 as required by the CBA.

■ The Court therefore concludes that although AFT-Local 1826 was timely consulted, AFT-Local 1825 was not. Plaintiff AFT-Local 1825 was forced to come to court to obtain redress.[2] On November 24, 1995 Defendants finally met with Plaintiffs to discuss the revised school calendar, but only after they were urged to do so by the Court. Since Defendants had to be sued to comply with the consultation requirements of the CBA, and since AFT-Local 1825 was consulted only as a result of this lawsuit, the Court considers AFT-Local 1825 to be the prevailing party. As the prevailing party, AFT-Local 1825 is entitled to receive costs, plus a contribution towards its attorney's fees from Defendants.

■ Although AFT-Local 1825 is the prevailing party on the declaratory issue of consultation, Defendants' Motion for Summary Judgment must be granted on the issue of injunctive relief, consistent with the provisions of Title 24 V.I.C. § 345. The Court cannot grant injunctive relief in a case involving or growing out of a labor dispute except after finding the five conditions outlined in section 345. Plaintiffs have not demonstrated that the conditions exist, therefore, the Court cannot grant the requested injunctive relief.[3]

Moreover, this Court rejects the exception to the anti-injunction rule suggested by Plaintiffs in their citation of *Boys Market v. Retail*

---

[2] The suspension of Title 24 V.I.C. §§ 374, 378 and 379 by Executive Order No. 363-95 foreclosed Plaintiffs from any other forum for relief, thus giving this Court jurisdiction as explained in the Order of December 12, 1995, filed herein.

[3] The five conditions are as follows: (1) that acts of fraud or violence have been threatened and will be committed unless restrained, or said acts have been and will continue to be committed unless restrained; (2) that substantial and irreparable injury to complainant's physical property will result; (3) that as to each item of relief sought on each allegation greater injury will be inflicted upon the defendants by the granting of relief; (4) that complainant has no other adequate remedy at law; and (5) that the public officers charged with the duty to protect the property of the complainant are unable or unwilling to furnish adequate protection. 24 V.I.C. § 345 (a-e).

*Clerks Local 770*, 398 U.S. 235 (1970). The exception applies only when (1) there is a valid collective bargaining agreement; (2) there is a strike in violation of a valid no-strike clause in that agreement; and (3) it is an arbitrable dispute. *Jacksonville Bulk Terminals, Inc. et al. v. International Longshoremen's Assoc., et al.*, 457 U.S. 702 (1982). Those conditions do not exist in this case, therefore the exception does not apply.

Accordingly, it is hereby,

DECLARED, that the consultation provision in the CBA requires the Commissioner of Education to obtain the input and advise of the union in the construction of the revised school calendar; and it is further,

ADJUDGED, that Defendants' Motion for Summary Judgment on the issue of injunctive relief is GRANTED; and it is further,

ORDERED, that Plaintiff AFT-Local 1825 shall be awarded its costs, plus a contribution towards its attorney's fees from Defendants, after submission of appropriate affidavits, with the other parties to bear their own costs and fees.

DATED this 1st day of February, 1996